Laurence Edward PALMER, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–93–00039–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

March 23, 1995.

Rehearing Overruled July 13, 1995.

Wm. Bennie House, Jr., Houston, for appellant.

John B. Holmes, Jr., Ernest Davila, Bill Stradley, Houston, for appellee.

Before HUTSON–DUNN, JUNELL * and ANDELL, JJ.

## OPINION

ANDELL, Justice.

A jury convicted appellant of criminally negligent homicide. TEX.PENAL CODE ANN. § 19.05 (Vernon 1994),[1] and after finding an

---

* The Honorable William E. Junell, retired Justice, Court of Appeals, Fourteenth District of Texas at Houston, sitting by assignment.

1. The version in effect at the time of the offense was: Act of June 14, 1973, 63rd Leg., R.S., ch. 426, art. 2, § 1, 1973 Tex.Gen.Laws 1122, 1123, 1124, *renumbered and amended by* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993

Tex.Gen.Laws 3586, 3586, 3614. That version provided:

**Sec. 19.07. Criminally Negligent Homicide**
(a) A person commits an offense if he causes the death of an individual by criminal negligence.
(b) An offense under this section is a Class A misdemeanor.

enhancement paragraph alleging a prior conviction for felony possession of a controlled substance true, the jury assessed his punishment at 90 days in jail. Appellant contends that the prosecution suppressed exculpatory evidence in violation of his Texas and federal constitutional rights to due course and due process of law, and that the trial court erred in overruling his motion to dismiss the cause on that basis (points one through 14). Appellant also asserts that the trial court committed reversible error in overruling his motion to suppress specified oral statements he made on the night of the offense (points 15 through 17), and also erred in overruling his special plea in jeopardy (points 18 and 19) and in denying his motion to set aside the information (point 20). We affirm.

Appellant does not challenge the sufficiency of the evidence to support his conviction. In the light most favorable to the verdict, *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), the evidence shows the following.

On January 21, 1992, at approximately 10:00 p.m., appellant was driving a Chevrolet Caprice taxicab westbound on Old Spanish Trail (O.S.T.) in Houston. A light mist was falling, the streets were slick, and it was dark. Appellant was in a hurry to pick up a fare, and was driving approximately 40 to 50 miles per hour as he approached the intersection with Fannin Street, which was under construction. The signal changed to red for O.S.T. and green for Fannin while appellant was still outside the intersection. Approximately four seconds later, after traffic had begun moving across O.S.T., appellant entered the intersection and struck the first vehicle off the line heading south on Fannin—a Chevrolet Geo Metro driven by Steven Ray—in the driver's side door. That initial collision started a chain reaction that caused two other cars to become involved in the accident. The police were called, and officer McPhail was sent to the scene. He took witness statements from others present, then walked up to appellant and asked, "What happened?" Appellant replied, "I was in a hurry to pick up a fare and ran the red light." When McPhail examined appellant's driver's license, he noticed that that day was appellant's birthday, and asked appellant if he had been drinking. Appellant replied that he had consumed one 40 ounce malt liquor "a while ago." McPhail performed several field sobriety tests on appellant, and appellant passed them all. Although none of the other drivers or their passengers was seriously hurt, Ray later died from head injuries he sustained in the accident. Appellant's prosecution and conviction, and this appeal, followed.

In points of error one through three, appellant contends that the prosecution suppressed exculpatory evidence in violation of his Texas and federal constitutional rights to due course and due process of law, and that the trial court erred in overruling his motion to dismiss the cause on that basis. In points of error four through 14, appellant asserts that the suppression of that evidence harmed him by preventing him from conducting full voir dire necessary to the intelligent exercise of peremptory strikes and development of bases for challenges for cause, and by depriving appellant of the opportunity to confront the witnesses against him, to present an effective opening statement, and to receive effective assistance from his trial counsel.

■■■ Pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the State has an affirmative duty to disclose evidence favorable and material to a defendant's guilt or punishment under the

---

At the time of the offense, the version of section 6.03(d) of the penal code then in effect—Act of June 14, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex.Gen.Laws 883, 893, *amended by* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3586, 3593—provided that

[a] person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

The present version of § 6.03(d) is identical. Tex.Penal Code Ann. § 6.03(d) (Vernon 1994).

due process clause of the fourteenth amendment. *Thomas v. State,* 841 S.W.2d 399, 407 (Tex.Crim.App.1992). The State has no duty to seek out exculpatory information independently on defendant's behalf.[2] Once such information comes into its possession, however, the State's duty under *Brady* attaches, with or without a request from the defense for such evidence. *Thomas,* 841 S.W.2d at 407. A violation of that duty occurs when a prosecutor (1) fails to disclose evidence (2) which is favorable to the accused, and which (3) creates a probability sufficient to undermine confidence in the outcome of the proceeding. *Id.* at 404. When unsure of whether to disclose the evidence, the prosecutor should submit the evidence to the trial judge for his consideration. *Id.* at 407.

The evidence allegedly suppressed was the testimony of Geraldine Williams, one of the other drivers involved in the accident. At a Wednesday morning hearing on the motion to dismiss based on prosecutorial suppression of exculpatory evidence, defense counsel testified, without objection, to the content of a phone call he had received from the prosecutor the night before. Defense counsel testified that the prosecutor had told him that on Monday night, after jury selection, the prosecutor had called Ms. Williams and learned from her that it was her recollection that just before the accident, Ray's vehicle had been on O.S.T., in the lane to turn left from traveling eastbound on O.S.T. to northbound on Fannin. Williams' recollection was contrary to that of all the other eyewitnesses, who had stated that Ray had been headed south on Fannin.

At the hearing, the prosecutor made unsworn representations to the trial court which were consistent with defense counsel's testimony in the foregoing respects. The prosecutor also related, without objection, that

> I had two conversations with this witness—a Geraldine Williams. The first conversation took place on October 26, 1992 [approximately six weeks before trial

began], and at around ten-thirty, and according to my notes. In that conversation, I learned that she had—that she observed the defendant run the red light, and that in her opinion the defendant was speeding. And after I learned that was going to be her testimony, I asked her if she would be able to make it to trial, and I told her a subpoena would be coming her way.

> After we picked the jury Monday night, I called all of my witnesses again, to make sure that they could all be here on Tuesday, and which is the day the testimony was to start....

> And in my conversation with her, I went through, again, the facts of the case, and I asked her to tell me in which direction [Ray] was coming from and in which direction the defendant was coming from, and she indicated to me, and as [defense counsel] had said earlier, that it was her impression that [Ray] was actually in the same direction of travel that she was [eastbound on O.S.T.], and that he was in the lane next to her, and that he was fixing [to] turn to left onto Fannin.

> ....

> [W]hen we came to court yesterday [Tuesday], it was my intention to tell [defense counsel] that he needed to talk to this witness, but as the day drew on, well, she didn't show up, and as we adjourned yesterday, well, it dawned on me that this might be in some way exculpatory, and in some way in light of *Brady.* So, I talked with my supervisors at the D.A.'s office, and we concluded that out of an abundance of caution, well, that I should tell [defense counsel] that that's what this witness said. So, then, as soon as I could, I looked up his phone number and I called him.

There followed a discussion among the trial court and the defense and prosecution, in which the trial court indicated that it would rule on the motion to dismiss only after hearing testimony from Ms. Williams. Defense counsel asked for and was granted a continuance, so that he could confer with her

---

**2.** *See United States v. Bagley,* 473 U.S. 667, 675, 105 S.Ct. 3375, 3379–80, 87 L.Ed.2d 481 (1985) ("purpose [of the *Brady* rule] is not to displace the adversary system" and prosecutor is "not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused" (footnote omitted) ).

and review with her what she remembered; thereafter, she was the only other witness to testify at the hearing on the motion to dismiss. Williams testified that she had told the prosecutor that she believed Ray's vehicle had been on O.S.T., in the lane to turn left from traveling eastbound on O.S.T. to northbound on Fannin, just before the accident. She also testified that she had told the prosecutor that well before appellant entered the intersection, the light had turned yellow, and appellant had applied his brakes but had slid into the intersection on the wet pavement. She was uncertain of when she had first told the prosecutor these things, but testified it could have been as much as two or three weeks before the hearing; her testimony raised a fact issue concerning the matter.

At the conclusion of the hearing, the trial judge denied the motion to dismiss, and explained his reasoning on the record. In pertinent part, the judge stated,

> [H]ere, we don't have evidence that was *suppressed.* We have here evidence that *was presented to the defendant, and timely.* Not immediately after it was known, *and which is always the preferred method.* And, according to the defense, because this witness—Ms. Williams—says under oath that she told [the prosecutor] two weeks ago, or at some other time, all of these details, well, it doesn't make it the truth, and the fact that she says under oath that she didn't discuss the details of this case on [the preceding Monday, two days before the hearing,] with the prosecutor, well, doesn't make it the truth or that she didn't discuss it. As the fact-finder, I find her testimony to be inconsistent and not convincing.
>
> . . . .
>
> I agree with counsel for the defense that if believed, and if known, and shown to be

known, prior to this hearing, and that the State had information that this witness was to testify as to the "yellow light" situation, and the "applying of the brakes," and the "sliding through the red light," and so on, well, that would definitely be *Brady* material, and exculpatory, and mitigating as to punishment, and would be useful, of course, for impeachment purposes.

But, I don't so find.

So, having said that, your motion is denied.

(Emphasis added.)

The trial judge, as fact finder, was permitted to conclude from everything before him that prior to the Monday night two days before the Wednesday hearing, the only thing the State knew about Williams' prospective testimony was that she would say appellant ran the red light; that the conversation in which she first related exculpatory information to the State took place on that Monday night; and that that exculpatory information was disclosed to the defense shortly thereafter, on Tuesday night. The question here is whether the trial judge erred in the legal conclusion he drew from those facts—i.e., that the State's disclosure was sufficient to comply with its obligation under *Brady.*

The case before us does not present the paradigmatic *Brady* situation. In *Brady* itself, the prosecution's suppression of exculpatory evidence did not come to light until Brady had been tried, convicted, and sentenced, and after his conviction had been affirmed. 373 U.S. at 84, 83 S.Ct. at 1194. The remedy to be afforded in that posture is a new trial, either limited to the issue of punishment—if, as in *Brady* itself, the suppressed evidence is, under the circumstances, germane only to punishment[3]—or on both guilt and punishment, if the suppressed evidence is germane to both.[4] Where the pros-

---

**3.** *Brady* was a murder case. Brady and a companion, Boblit, were both accused as co-participants in the same killing, but were tried separately; Brady's trial was first. Brady took the stand at trial and admitted his participation in the crime, but asserted that Boblit did the actual killing; and in his summation to the jury, Brady's counsel conceded that Brady was guilty of murder, but argued that his client should not receive the death penalty. The jury convicted Brady and sentenced him to death. 373 U.S. at

84, 83 S.Ct. at 1195. The evidence suppressed was a statement from Boblit, "in which Boblit admitted the actual homicide[.]" *Id.*

**4.** *See, e.g., United States v. Olson,* 697 F.2d 273, 274–76 (8th Cir.1983) (convictions reversed and case remanded for new trial where (a) defendant contended that he obtained $50 bill at a bank and innocently passed it in Minnesota; (b) the prosecutor disclosed, very late in the govern-

ecution, however, has not completely failed to disclose exculpatory evidence, but rather has disclosed *Brady* material during an ongoing trial, then the first element of the showing to establish a *Brady* violation is modified accordingly.

The courts have uniformly held that, in such circumstances, the inquiry is whether the defendant was prejudiced by the tardy disclosure. If the defendant received the material in time to put it to effective use at trial, his conviction should not be reversed simply because it was not disclosed as early as it might have and, indeed, should have been.

*United States v. McKinney*, 758 F.2d 1036, 1050 (5th Cir.1985); *accord, Givens v. State*, 749 S.W.2d 954, 957 (Tex.App.—Fort Worth 1988, pet. ref'd).

Here, appellant established the second element of a *Brady* violation—namely, that the evidence in question was favorable to him. Favorable evidence includes both exculpatory evidence, which tends to justify, excuse or clear the defendant from guilt; and impeachment evidence, which tends to dispute, disparage, deny, or contradict inculpatory evidence. *Thomas*, 841 S.W.2d at 404. Williams' testimony was susceptible to use to contradict the other witnesses' testimony.

Appellant has not established the first and third elements of a *Brady* violation—namely, that the prosecution's disclosure came at a time when he was no longer able to put the material to effective use at trial, and that the effect was to create a probability sufficient to undermine confidence in the outcome of the proceeding. Although appellant asserts that he was prejudiced in that he would have conducted his voir dire and peremptory strikes and opening statement differently had he known of Williams' contradictory testimony earlier, the cases to which we have been cited focus instead upon whether the *Brady* material comes to light in time to utilize it *during the presentation of evidence to the jury. See, e.g., Givens*, 749 S.W.2d at 957 ("appellant discovered the statement early enough to make use of it at trial; it was introduced into evidence and read in presence of the jury").[5] Here, appellant learned that Williams' account contradicted the other witnesses' accounts in time to present Williams' account to the jury; and appellant has not shown that any of the witnesses who had already testified were no longer subject to recall for continued cross-examination in light of the new information from Williams. Appellant has not shown that he was deprived of either the opportunity to confront the witnesses against him or otherwise to make effective use of Williams' account during the presentation of evidence to the jury; nor, in turn, has appellant shown that he was deprived of effective assistance from his trial counsel. In addition, appellant has cited us to no authority to indicate that loss of the opportunity to conduct voir dire or opening statement differently, standing alone, is sufficient prejudice to warrant reversal. Independently, we know of no authority for that proposition; and we find the proposition itself suspect.

Any revelation of previously undisclosed *Brady* material to the defense during trial

ment's case in chief, that shortly before the trial began, he had learned that two Minnesota men had been arrested in Kansas City with identical counterfeit bills in their possession; and (c) trial court abused discretion in denying motion for continuance because disclosure came so late in trial that defendant could not take advantage of the benefits of the evidence in the absence of a continuance).

5. *See also United States v. Ellender*, 947 F.2d 748, 757 (5th Cir.1991) (even though government did not produce letters in question until after trial had started, defendants had copies six weeks before witness testified, which was sufficient time to prepare to impeach him); *United States v. Higgs*, 713 F.2d 39, 44 (3rd Cir.1983) (held, district court order that government had to disclose information approximately a week prior to trial was an abuse of discretion, because "disclosure made the day that the witness testifies ... will allow ... effective[] use ... of that information to challenge the veracity of the government witnesses"); *United States v. Decker*, 543 F.2d 1102, 1105 (5th Cir.1976) (prosecutor's disclosure of his own recollection that contradicted government witnesses' testimony, after witness was off the stand but while he was still subject to recall was sufficient to fulfill government's duty of disclosure); *cf. United States v. Arcentales*, 532 F.2d 1046, 1050 (5th Cir.1976) (rejecting appellant's claim that government's failure to disclose inculpatory statement in response to discovery order prejudiced him because statement contradicted his counsel's opening argument).

would, we think, normally happen during the State's presentation of evidence to the jury, such that the defendant's loss of the opportunity to conduct voir dire or opening statement differently would seem to be a concomitant of nearly every disclosure of *Brady* material during trial—except for unusual instances in which the previously undisclosed *Brady* material were to come to light during the State's own voir dire or opening statement, through the State's own use, at that stage of the trial, of the evidence constituting *Brady* material. On this logic, the appellant normally would suffer loss of the opportunity to conduct voir dire or opening statement differently only where the State loses or foregoes that same opportunity, or utilizes it only subtly enough that the defense is not alerted to the possible existence of the evidence constituting *Brady* material. But where the State loses or foregoes that same opportunity, or utilizes it only that subtly, we find it difficult to envision a set of facts on which the defense's concomitant loss of that opportunity, standing alone, would detract from the defense so disproportionately as to create a probability sufficient to undermine confidence in the outcome of the proceeding.

Appellant has shown no violation of his federal constitutional right to due process, as expounded in *Brady* and its progeny. Appellant has not separately briefed his contention that the prosecution's conduct here also constituted a violation of his Texas constitutional right to due course of law. Accordingly, that contention presents nothing for review, and we do not address it. *See DeBlanc v. State,* 799 S.W.2d 701, 706 (Tex.Crim.App.1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991) (lack of argument or authority based upon Texas Constitution waived art. I, § 10 contentions included in a single point of error with asserted federal constitutional violations).

Points of error one through 14 are overruled.

The discussion of the remaining points of error does not meet the criteria for publication, Tex.R.App.P. 90, and is thus ordered not published.

The judgment of the trial court is affirmed.