In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00097-CR


______________________________




ANTONIO DEMOND SCOTT, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 102nd Judicial District Court


Bowie County, Texas


Trial Court No. 04F0574-102




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Antonio Demond Scott was convicted of burglary of a habitation and assessed punishment
by a jury of life imprisonment. On appeal, Scott claims there was factually insufficient evidence to
support the jury's findings that he entered the habitation without permission and that he used or
exhibited a deadly weapon during the offense. Scott further asserts the State committed Brady (1) error
when it provided Scott with criminal histories of the State's rebuttal witnesses during trial. On a
thorough review of the evidence and arguments, we affirm Scott's conviction and sentence of life
imprisonment. 

I. Evidence of Entering Habitation Without Permission and Use of a Deadly Weapon

 Scott's first point of error claims the evidence is factually insufficient to support a finding that
he entered Randall Brian's habitation without permission. (2) His second point claims there is factually
insufficient evidence to support the deadly weapon finding. The indictment alleged Scott "did . . .
intentionally or knowingly enter a habitation, without the effective consent of Randall Brian, . . . and
attempted to commit or committed the felony offense of aggravated assault with a deadly weapon
. . . ." Because both these points of error need a detailed examination of the evidence presented, we
will address them together.

 In a factual sufficiency review, we view all the evidence in a neutral light and determine
whether the evidence supporting the verdict is so weak that the fact-finder's verdict is clearly wrong
and manifestly unjust or whether the great weight and preponderance of the evidence is contrary to
the verdict. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006); see also Johnson v.
State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim.
App. 1996). It is the fact-finder's role to judge the credibility of the witnesses and the weight to be
given their testimony, and the fact-finder "may resolve or reconcile conflicts in the testimony,
accepting or rejecting such portions thereof as it sees fit." Banks v. State, 510 S.W.2d 592, 595 (Tex.
Crim. App. 1974); see also Scott v. State, 814 S.W.2d 517, 518-19 (Tex. App.--Houston [14th
Dist.] 1991, pet. ref'd). When evidence both supports and conflicts with the verdict, we must assume
that the fact-finder resolved the conflict in favor of the verdict. Turro v. State, 867 S.W.2d 43, 47
(Tex. Crim. App. 1993); see also Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006)
("our factual-sufficiency jurisprudence still requires an appellate court to afford 'due deference' to
the jury's determinations"). The appellate court's role is not to "find" facts; rather, it is to determine
whether the verdict is against the great weight of the evidence presented at trial so as to be clearly
wrong and unjust. Ballard v. State, 161 S.W.3d 269, 277 (Tex. App.--Texarkana 2005), aff'd, 193
S.W.3d 916 (Tex. Crim. App. 2006) ("trial court, acting as finder of fact in the face of conflicting
evidence, was authorized to believe or disbelieve any portion of the evidence").

Facts 

 Randall Brian (3) was in his living room, playing video games, around 1:00 a.m. on April 19,
2003. He had a loaded shotgun on his lap and seventy-five pounds of marihuana in his closet. Brian
testified he did not know Scott and had never met him. According to Brian, three intruders, wearing
ski masks, broke down the door from his carport to his kitchen and immediately began shooting their
firearms at him. Brian testified he did not give anyone permission to enter his house. When he
heard his door open, Brian pressed a small button on his video game controller and "paused" his
game. (4) Brian rolled off the couch and returned fire, hitting one intruder. The first shot by the
intruders hit Brian in his left ear. Brian's shots struck one intruder, who yelled, and continued firing. 
The person shot by Brian was between the aquarium and kitchen bar/counter. Brian said that person,
hit by Brian's shot, "fell back against my bar" leaving blood and handprints. This all transpired in
a "matter of seconds." 

 The gunmen left Brian's house as they had entered, through the carport entrance. Blood was
found in Brian's house in the carport entrance area where the gunmen entered, in the carport, in the
driveway, and in the street. The trail of blood spots in the street left a path to a vacant lot next to
Brian's house. Blood in the house and in the driveway was positively identified as Scott's. 

 Scott appeared in the early morning hours after the shooting at Christus St. Michael hospital
in Texarkana; he was being treated for a gunshot wound to his right thigh. Scott told police he had
been shot at a barbecue. At trial, Scott testified he had bought marihuana from Brian on previous
occasions and had been at Brian's house on at least five or six prior occasions. Scott testified that,
on the evening of the shooting, he had been drinking a good deal and had "popped a few zanec [sic]
bars." He was having a barbecue with friends and they ran out of marihuana, so he called Brian and
arranged to purchase three pounds of marihuana for $1,500.00. According to Scott, he knocked at
the carport door and Brian answered and let him in. Scott said his package of marihuana was on the
dining room table; he paid $1,500.00 to Brian, who went to the couch and counted the money. Scott
said that, as he was leaving, the door was knocked down and men with guns entered and started
shooting. He said that, after the shooters left, Brian helped him up and said he could retrieve his
marihuana later. Scott said he went back to his brother, waiting in a car outside, and the next thing
he remembers is being at the hospital. 

 Scott also testified that, about a month and a half before trial (April 2006), he encountered
Brian in the Bowie County jail annex. When Scott asked Brian why Brian had not told "the truth"
about the circumstances the night of the shooting, Brian told Scott "that it wasn't him [Brian], it was
the State. [Brian] had to press charges. All he made was a statement, and they got something
holding over his head and that's the reason why he was going to court." 

 Scott presented testimony from Quinton McMillan, who had met both Scott and Brian, at
different times, in the Bowie County jail system. McMillan testified he knew Brian and had seen
him in the jail, and when McMillan asked about the crime which had led Brian to being incarcerated,
Brian said he had been involved in selling marihuana to someone, and in the course of selling the
drugs, his door was kicked in. The only connection between Brian and Scott, according to
McMillan's testimony, was that Brian "indicate[d] his familiarity with what [McMillan] later learned
to be Antonio Scott." 

 In rebuttal, the State offered testimony of victims of two other robberies where armed men,
in one case masked, had entered residences and robbed the inhabitants. Jerial Williams and Gaylon
Dixon positively identified Scott as one of the masked men who robbed them and others at the home
of Christopher Jones, in Texarkana, on September 30, 2003. John Kennedy testified that Thurrayya
Bailey, an acquaintance of Kennedy and Scott, got Kennedy to go outside of his home on the night
of July 12, 2005. While Bailey and Kennedy talked in Kennedy's car, Scott and two other men
dragged Kennedy from his car, beat him, then went into his home where they threw his wife from
her wheelchair and stole $2,700.00, the deed to his home, and the car keys. 


II. Factual Sufficiency of the Evidence

 A. Angle of Bullets

 Scott bases his attacks on the sufficiency of the evidence in large part on the testimony
concerning the angle of the shots fired by the intruders. Crime scene investigator Steven Womack
testified the bullet holes in the wall above the couch were at a "slight angle, not a steep one . . . there
was somebody that was standing, I would say John Wayne, shooting from the hip." Scott contends,
"Brian testified that the four shots were fired by the intruder after the intruder was shot and after the
intruder 'fell back' against the kitchen bar." Brian's testimony was as follows: 

 [Defense counsel]: . . . Is it your testimony or do you know who shot those four shots 

 above your couch? Did they all come from the same guy? 


 [Brian]: It was whoever I shot.


 Q. Whoever . . .


 A. Whoever the first guy was, whoever had the shotgun, is the one that I shot. 


 Q. Okay. Is he the one you hit?


 A. Yes, sir.


 Q. Sir?


 A. Yes, sir, he is the one that I shot.


 Q. So the one that you shot then was able to then shoot four more?


 A. Yes, sir. 


 Q. Even though he fell to the ground after you shot him. 

 A. No, he did not fall to the ground. He fell back against my bar. There was blood
and hand prints where he slid across my bar. 


 Q. Okay. Now how long did all that take? 


 A. A matter of seconds. 


Officer Womack was asked the following on cross-examination:


 Q. And in your investigation you were able to determine that according to Mr. Brian,
he shot one of the suspects. Right?


 A. Yes, sir.


 Q. And that suspect landed on the ground. Right?


 A. Yes, sir.


 Q. Now a suspect on the ground couldn't have fired those. Correct? To get the

 angle? 


 A. Because the angle would not be right. No, they would be an up angle. 


 From this testimony, Scott argues, "Womack concluded that the person who was shot could
not have fired the four gunshots." We do not read Womack's testimony as requiring such a
conclusion. Even though Womack agreed the intruder fell to the ground, Womack was not testifying
from personal knowledge. Neither Womack nor any other investigator testified the investigation
established that Scott fell to the floor. Womack's testimony appears to agree with counsel that,
generally, when one is shot and falls to the floor, the angle of a bullet from such fallen person would
be at an upward angle. Other than Scott's testimony, there is no other evidence Scott fell down rather
than falling back against the kitchen bar/counter. Brian's testimony was explicit: when asked if the
shooter fell to the floor, he corrected the cross-examiner and stated, "No, he did not fall to the
ground. He fell back against my bar." This created a factual issue to be resolved by the jury.

 B. Blood, Video Game Pause, Brian's Statements

 According to Scott, Brian's testimony that he put his video game on pause as armed intruders
were crashing down his door is untenable. Scott claims that the amount and location of blood in
Brian's home supports Scott's version of events and contradicts Brian's. Further, Scott claims that
Brian's purported statements in jail to Scott, and the testimony of McMillan, marshal against Brian's
allegations and support Scott's testimony. 

 As for the matter of the blood at the scene, from the record before us, it appears there are
patches and spots of blood in front of the kitchen bar/counter, as well as in front of the wall where
the aquarium and television were located. We note, also, that these two areas are not on opposite
sides of the room, but rather are relatively close. Thus, this element of Scott's argument, as well as
the issue of the paused video game, the credence to be given to statements attributed to Brian while
he and Scott were in jail, the large, packaged amount of marihuana and cash found in the kitchen
drawer, and the testimony of McMillan were submitted to the jury to reconcile any conflicts or
contradictions. 

 Conflicts in testimony are to be resolved by the finder of fact--here, the jury. See Bonham
v. State, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984); Bottenfield v. State, 77 S.W.3d 349, 355
(Tex. App.--Fort Worth 2002, pet. ref'd). The jury is free to believe or disbelieve the testimony of
any witness, to reconcile conflicts in the testimony, and to accept or reject any or all of the evidence
of either side. Bottenfield, 77 S.W.3d at 355. We may not substitute our own determination for that
of the jury. See Ortiz v. State, 93 S.W.3d 79, 87-88 (Tex. Crim. App. 2002); Scott v. State, 934
S.W.2d 396, 399 (Tex. App.--Dallas 1996, no pet.). Accordingly, the jury in this case was entitled
to believe the testimony of Brian and resolve any inconsistencies in his favor. Further, in a factual
sufficiency analysis, the existence of alternative reasonable hypotheses raised by the record may still
be considered, but their existence is not determinative. See Wilson v. State, 7 S.W.3d 136, 141 (Tex.
Crim. App. 1999). The jury was charged with the task of believing either Brian's version of what
happened that night, or Scott's. The jury had available all the evidence we have summarized. 
Viewing the evidence in a neutral light, we cannot say that the evidence supporting the verdict is so
weak that the fact-finder's verdict is clearly wrong and manifestly unjust or that the great weight and
preponderance of the evidence is contrary to the verdict. Watson, 204 S.W.3d at 417. 

 We make this finding on both the issue of whether Scott had permission to enter Brian's
house and the issue of whether Scott used or exhibited a deadly weapon. Where the evidence is
sufficient to support a finding that Scott entered the dwelling without the owner's permission, it is
also, in these circumstances, sufficient to support a finding of Scott's use or exhibition of a deadly
weapon. Once the jury rejected Scott's alibi that he had entered Brian's house with permission, the
only other plausible explanation for Scott's presence was that proffered by the State--that Scott and
his confederates entered the house to rob Brian and were armed. We overrule the first two points
of error. 

III. Brady Issue

 

 Scott's final point of error complains about the way he was provided criminal histories of the
State's rebuttal witnesses. In the State's rebuttal case, it presented several witnesses who implicated
Scott in two extraneous armed robberies. When Scott asked for criminal histories on five of the
State's rebuttal witnesses, the State indicated it did not have the histories immediately available and
would provide them as soon as possible. (5) The trial court denied Scott's requests for continuances
and mistrials. The trial court kept each witness available for recall. Scott's trial attorney proceeded
to cross-examine the State's rebuttal witnesses. He refused at least three offers by the trial court to
recall the rebuttal witnesses. 

 To rebut Scott's defense that he had entered Brian's house with permission, the State offered
testimony implicating Scott in two other armed robberies. Along with the testimony of police
officers who had investigated these crimes, the State offered witness testimony from Christopher
Jones, Gaylon Dixon, Jerial Williams, Thurrayya Bailey, and John Kennedy. When Scott began
cross-examining Jones, he asked for Jones' criminal history. The State replied it did not have one
available but would "run" it and supply it as soon as possible. Jones testified "in the uniform of one
who is incarcerated," and testified he was currently serving a federal sentence for felon in possession
of a firearm. He acknowledged having been convicted of the felony offense of possession of
marihuana and the misdemeanor offense of possession of marihuana. Scott's attorney cross-examined Jones and then Dixon. Dixon denied any criminal convictions. Williams acknowledged
having been convicted of the felony offense of possession of marihuana and was on community
supervision at the time of his testimony. At the end of its direct examination of Williams, the State
announced it was providing Scott's attorney with a copy of Jones' (the first witness) criminal history. 
At the end of Scott's cross-examination of Williams, the State tendered Scott with criminal histories
of Williams, Dixon, Kennedy, and Bailey. At this point, the State called four police officers. Bailey
next took the stand for the State. She acknowledged being under indictment for aggravated robbery
at the time of her testimony and denied having any felony convictions. (6) Kennedy testified next about
a "whipping" Scott gave Kennedy at Kennedy's home, and that Scott and two other men robbed
Kennedy. Kennedy was never asked about any criminal history. According to the history entered
as evidence, in April 1995 Kennedy had entered pleas of guilty to two felony charges of delivery of
more than one-fourth ounce, less than five pounds, of marihuana. 

 In order to ensure the accused a fair trial, the State has an affirmative duty under the Due
Process Clause of the Fourteenth Amendment to turn over exculpatory or impeachment evidence
favorable to the defendant which is material either to guilt or to punishment. Thomas v. State, 841
S.W.2d 399, 407 (Tex. Crim. App. 1992) (citing Brady, 373 U.S. at 85); see also Palmer v. State,
902 S.W.2d 561, 562-63 (Tex. App.--Houston [1st Dist.] 1995, no pet.). In order to establish a due-process violation under Brady, a defendant must show: 1) evidence was suppressed; 2) the
suppressed evidence was favorable to the defense; and 3) the suppressed evidence was material to
either guilt or punishment. Fox v. State, 175 S.W.3d 475, 490 (Tex. App.--Texarkana 2005, pet.
ref'd). Favorable evidence is "material" if there is a reasonable probability (i.e., a probability
sufficient to undermine confidence in the outcome of the trial) that, had the evidence been disclosed
to the defense, the result of the proceeding would have been different. Thomas, 841 S.W.2d at 404. 
When, however, as in the instant case, the Brady material is discovered during trial, the initial
inquiry is whether the appellant was prejudiced by the delayed disclosure. Palmer, 902 S.W.2d at
565. The disclosure of Brady material during trial satisfies the requirements of due process "[i]f the
defendant received the material in time to put it to effective use at trial." Id.; Givens v. State, 749
S.W.2d 954, 957 (Tex. App.--Fort Worth 1988, pet. ref'd). "[A] defendant's conviction should not
be reversed simply because it [the Brady material] was not disclosed as early as it might have and,
indeed, should have been." Palmer, 902 S.W.2d at 565. The Palmer (7) court's analysis focused on
"whether the Brady material comes to light in time to utilize it during the presentation of evidence
to the jury." Id. To prevail on his or her Brady claim, an appellant must show that the State's tardy
disclosure prejudiced the appellant. Little v. State, 991 S.W.2d 864, 867 (Tex. Crim. App. 1999). 
To show prejudice, the appellant must show a reasonable probability that, had the evidence been
disclosed to the defense earlier, the result of the proceeding would have been different. Id. at 866.

 Here, Scott has not demonstrated he was prejudiced by the timing of the State's production
of the criminal histories of the rebuttal witnesses. He did not recall any of the rebuttal witnesses and
did not make a record of what questions he would have put to them once he possessed the possible
impeachment evidence--nor did he move for a new trial to make a record of how he could have
impeached the witnesses. We cannot say the delay encountered in production of the requested
information undermines our confidence in the trial's outcome. As mentioned, all but one witness
disclosed their pertinent convictions. The State had presented evidence putting Scott in Brian's
house; the rebuttal evidence was presented to address Scott's testimony that he had permission to be
there. The evidence Scott wanted (and received, albeit tardily), was at most useful to undermine the
witnesses' credibility. Such impeachment was achieved to some extent when the witnesses disclosed
their convictions, where applicable. Scott has failed in his burden to demonstrate a reasonable
probability that the outcome of his trial would have been different. 

 This is not to say we approve of the procedure in this case. The State should produce such
relevant information when it knows the substance of the rebuttal evidence. Finding, in this instance,
that Scott has not shown that the result of this proceeding would have been different had the criminal
history information been produced in a more timely manner, we find no reversible error.

 We affirm the judgment of the trial court.



 Jack Carter

 Justice


Date Submitted: February 28, 2007

Date Decided: April 6, 2007


Do Not Publish 

1. Brady v. Maryland, 373 U.S. 83 (1963).
2. Section 30.02 of the Texas Penal Code provides: 

 (a) A person commits an offense if, without the effective consent of the
owner, the person:

 (1) enters a habitation, or a building (or any portion of a building) not
then open to the public, with intent to commit a felony . . . . 


Tex. Penal Code Ann. § 30.02 (Vernon 2003).

 
3. As police investigated Brian's home, they found about seventy-five pounds of marihuana. 
He pled guilty to felony possession of marihuana; he was serving ten years' community supervision
when he testified. 
4. According to Brian, his video game had "just a small controller. There's a button right in
the center, a start button, that pauses. I heard the door open. I hit the pause, and I dropped the
controller. I mean if you look at the pictures, it was on the floor. I threw it." 
5. There are "omnibus" requests for discovery, criminal records of witnesses, and a motion in
limine in the clerk's record, none of which indicate they were ruled on by the trial court. The matter
was discussed during a pretrial hearing, where the parties agreed the defense would be provided
names of the State's witnesses for the case-in-chief, but not rebuttal.
6. The victim of the robbery for which she was indicted, John Kennedy, had filed an affidavit
of nonprosecution. 
7. In Palmer, the exculpatory evidence involved a witness who would have contradicted the
other State's witnesses regarding Palmer's direction of travel in a trial for criminally negligent
homicide. Palmer, 902 S.W.2d at 563. 


an'> 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00159-CR

                                                ______________________________

 

 

                                    RAYMOND LEE REESE,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 124th
Judicial District Court

                                                             Gregg County, Texas

                                                           Trial
Court No. 34609B

 

                                                         
                                         

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley








                                                                   O P I N I O N

 

I.          BACKGROUND

            Raymond
Lee Reese appeared on the first day of his felony trial for driving while
intoxicated (DWI) but after that first day, must have seen the handwriting on
the wall[1]
because he failed to appear for the second day of the trial, January 18, 2006.  Reeses absence failed to hinder the progress
of the trial; the wheels of justice continued to grind and he was tried in
absentia[2]
on the DWI charge, was found guilty, and was sentenced to seven years
imprisonment.[3]  The DWI conviction was then not his sole
problem because he was charged by indictment with the further offense of bail
jumping and failure to appear[4]
when he failed to reappear to continue his trial.  After being apprehended, Reese entered a plea
of guilty to the charge of bail jumping and failure to appear on October 9,
2006.  Reese was sentenced to five years
imprisonment for the bail jumping/failure to appear offense, which sentence was
ordered to run consecutively with the seven-year sentence imposed as a result of
his DWI conviction.[5]  

            Reese
waived his right to file a direct appeal, but was granted an out-of-time appeal
after having filed an application for a writ of habeas corpus with the Texas Court
of Criminal Appeals.  The Texas Court of
Criminal Appeals held that the waiver did not bar Reese from appealing issues
related to his sentence.  

            On
his appeal of the bail jumping/failure to appear conviction, Reese claims that
the trial court erred in ordering the two sentences (DWI and bail jumping/failure
to appear) to be served consecutively, assuming the position that:  (1) Section 3.03 of the Texas Penal Code
mandates concurrent sentencing because the offense of bail jumping/failure to
appear is tied to the offense of DWI, maintaining that both offenses of which
he was convicted are part of the same criminal episode; and (2) the court did
not impose the sentence for Reeses DWI conviction until after imposition of
sentence for the bail jumping/failure to appear conviction.

            Because
we find no error on the part of the trial court in ordering these two sentences
to run consecutively, we affirm the order cumulating the two sentences.

II.        ANALYSIS

            Article 42.08(a)
of the Texas Code of Criminal Procedure[6]
gives the trial court the discretion to cumulate sentences; therefore, a
complaint about consecutive sentences is reviewed using an abuse of discretion
standard.  Tex. Code Crim. Proc. Ann. art. 42.08(a); Malone v. State, 163 S.W.3d 785, 803
(Tex. App.Texarkana 2005, pet. refd).

            The Concurrent-Sentence Provision of Texas Penal Code Section 3.03 Does
Not Apply

            Section
3.03 of the Texas Penal Code limits the trial courts discretion in cumulating
(stacking) sentences:  

When the accused is found guilty of more than one
offense arising out of the same criminal episode prosecuted in a single
criminal action, a sentence for each offense for which he has been found guilty
shall be pronounced.  Except as provided
by Subsection (b), the sentences shall run concurrently. 

 

Tex.
Penal Code Ann. § 3.03(a) (Vernon Supp. 2009).  The Legislature has defined criminal episode
as:

[T]he commission of two or more offenses,
regardless of whether the harm is directed toward or inflicted upon more than
one person or item of property, under the following circumstances:

 

            (1)        the offenses are committed pursuant to
the same transaction or pursuant to two or more transactions that are connected
or constitute a common scheme or plan; or

 

            (2)        the offenses are the repeated commission
of the same or similar offenses.

 

Tex.
Penal Code Ann. § 3.01 (Vernon 2003).

            Reese
contends the offenses of bail jumping/failure to appear and DWI are part of the
same criminal episode in accord with the definition of that phrase set forth
in the above statute. When two or more offenses are part of the same criminal
episode, Reese argues, sentences for those offenses must run concurrently, even
when proceedings are separate.  No
authority is cited for this proposition; the lack of any authority cited to
support that claim is quite understandable because we find none.  On the contrary, a plain reading of the
statute mandates the opposite conclusion.  In accord with Section 3.03 of the Texas Penal
Code, sentences are concurrent only if two predicate conditions are first met:  (1) the offenses arise out of the same
criminal episode; and (2) the offenses are prosecuted in a single criminal
action.  See Tex. Penal Code Ann.
§ 3.03(a).

            A
single criminal action refers to a single trial or plea proceeding; as such,
a defendant is prosecuted in a single criminal action when allegations and
evidence of more than one offense arising out of the same criminal episode are
presented in a single trial or plea proceeding. 
Baker v. State, 107 S.W.3d
671, 673 (Tex. App.San Antonio 2003, no pet.).  As explained in LaPorte v. State, 840 S.W.2d 412, 41415 (Tex. Crim. App. 1992):

[A] prosecutor is encouraged to clear case dockets
by trying more than one case in a single trial whenever multiple offenses
arising from a single criminal episode are alleged against a single defendant,
and a defendant benefits by not being burdened with the possibility of
consecutive sentences and a string of trials for offenses arising out of a
single criminal episode.  Section 3.04
provides a defendant the right to have separate trials if he so desires.

 

            Accordingly,
[i]f the facts show the proceeding is a single criminal action based on
charges arising out of the same criminal episode, the trial court may not order
consecutive sentences.  Id. at 415.  Therefore, in order to show entitlement to
concurrent sentencing, Reese must establish not only that the offenses arose
out of the same criminal episode, but that he was also prosecuted in a single
criminal action.  If either predicate is
not proven, the sentences were properly cumulated.  See
Ex parte McJunkins, 954 S.W.2d 39, 4041
(Tex. Crim. App. 1997) (Section 3.03 comes into effect through trial in single
criminal action of multiple offenses arising from single criminal episode when
State chooses to join offenses in single criminal action and defendant chooses
not to demand severance); Duran v. State,
844 S.W.2d 745, 747 (Tex. Crim. App. 1992).

            Here,
Reese was tried by jury on the DWI charge in January 2006.  Reese then entered a guilty plea to the
charge of bail jumping/failure to appear in October 2006.  Because Reese was not tried in a single trial
or plea proceeding, the predicate showing of prosecution in a single criminal
action cannot be made.  Accordingly, the
mandatory concurrent-sentence provision of Section 3.03 of the Texas Penal Code
does not apply.  Tex. Penal Code Ann. § 3.03 (Vernon Supp. 2009); Duran, 844 S.W.2d at 747.  Because Reese was not prosecuted in a single
criminal action, we do not address the issue of whether the offenses here were
part of the same criminal episode.

            The Order of Convictions Permits Consecutive Sentencing

            Apart from his
argument that consecutive sentences are not authorized under Section 3.03 of
the Texas Penal Code, Reese complains that the sentence in this case (bail
jumping/failure to appear) was stacked upon a sentence (the DWI) that was not
assessed and imposed at the time the cumulation order was entered October 9,
2006.  The sentence in the DWI case was
assessed by jury January 18, 2006, and imposed by judgment of the trial court
March 7, 2008.  In contrast, the sentence
in this case was assessed and imposed October 9, 2006.  Reese contends that because the trial court
stacked the sentence for bail jumping/failure to appear on a sentence that had
not been imposed at the time sentence was assessed and imposed in this case,
there was no previous sentence in existence upon which the current sentence
could be stacked.  We find no merit in
this contention.

            The
Texas Court of Criminal Appeals has determined that there is no requirement
that the sentence in the first conviction be imposed before a sentence in a
second conviction can be cumulated with the first sentence.  Barela
v. State, 180 S.W.3d 145, 149 (Tex. Crim. App. 2005).  In that case, Barela pled guilty in Arizona
to two counts of attempted second-degree murder.  After the plea was accepted and entered, the
court reset the matter for sentencing. 
Barela escaped from jail and absconded, fleeing to Texas prior to the
date of the sentencing hearing.  Once in
Texas, Barela was indicted and convicted of two other counts of aggravated
robbery and sentenced to forty years imprisonment.  At sentencing, the court ordered that the
sentence in the aggravated robbery case not commence until Barela completed his
sentence in Arizona.  Id. at 14647.

            On
appeal, Barela asserted the trial court abused its discretion by cumulating the
sentences because he was sentenced in Texas before he was sentenced in
Arizona.  The Texas Court of Criminal
Appeals affirmed the court of appealss conclusion that the cumulation order
was proper. Id. at 147.  In reaching this conclusion, the court
recognized that Article 42.08 of the Texas Code of Criminal Procedure focuses
on the order of conviction, not the order of sentencing, and under Arizona law,
Barela was convicted in Arizona at the time the trial court entered his
plea.  The plain language of Article
42.08(a) of the Texas Code of Criminal Procedure emphasizes that a subsequent
conviction can be cumulated with a prior conviction.  Id.
at 149.  It is the order of conviction,
rather than the order of sentencing, that is important when contemplating the
propriety of a cumulation order.  Id. 
The court recognized that there is no statutory requirement that a
sentence must be imposed in the first conviction before a stacked sentence may
be imposed in a subsequent sentence.  Id. (citing Nicholas v. State, 56 S.W.3d 760, 766 (Tex. App.Houston [14th
Dist.] 2001, pet. refd)).

            The
fact that Reese was not formally sentenced in the DWI case before he was
formally sentenced in the bail jumping/failure to appear case is not relevant
to the propriety of the cumulation order. 
Barela, 180 S.W.3d at
149.  We find no abuse of discretion on
the part of the trial court in entering the cumulation order in accordance with
Article 42.08 of the Texas Code of Criminal Procedure.  Tex.
Code Crim. Proc. Ann. art. 42.08 (Vernon Supp. 2009).

            We
affirm the judgment of the trial court.

 

 

                                                            Bailey
C. Moseley

                                                            Justice

 

Date Submitted:          February
9, 2010

Date Decided:             February
10, 2010

 

Publish











[1]Daniel
5:5.

 





[2]See Tex.
Code Crim. Proc. Ann. art. 33.03 (Vernon 2006).

 





[3]Reeses
appeal of his DWI conviction to this Court in cause number 06-08-00047-CR was
affirmed. In that appeal, Reese complained, inter
alia, of the cumulation order. 
Because Reese did not appeal the trial courts judgment in the failure
to appear case, this Court held that it lacked jurisdiction to address the
merits of the cumulation order.  Reese v. State, 273 S.W.3d 344, 348
(Tex. App.Texarkana 2008, no pet.).

 





[4]Tex. Penal Code Ann. § 38.10 (Vernon
2003).

 





[5]Although
the jury assessed punishment at seven years imprisonment on January 18, 2006,
for Reeses DWI conviction, he was not formally sentenced for that conviction
until March 7, 2008.  Reeses sentence
for the DWI conviction was made subject to the cumulation order issued in the
judgment of conviction by the trial court on the charge of bail jumping and
failure to appear.  





[6]Article
42.08 of the Texas Code of Criminal Procedure provides, in relevant part:

                (a)           When the same defendant has been convicted in two or more
cases, judgment and sentence shall be pronounced in each case in the same
manner as if there had been but one conviction. . . . [I]n the discretion of the
court, the judgment in the second and subsequent convictions may either be that
the sentence imposed or suspended shall begin when the judgment and the
sentence imposed or suspended in the preceding conviction has ceased to
operate, or that the sentence imposed or suspended shall run concurrently with
the other case or cases . . . . 

Tex. Code Crim. Proc. Ann. art. 42.08(a) (Vernon Supp. 2009).