

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-09-00176-CR

_____

TIMOTHY DALE WILKINS, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Hunt County, Texas
Trial Court No. CR0701683

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Jessica Reichle[1] left her husband and young child to live with Timothy Dale Wilkins, Jr., in Lone Oak, Texas, in a relationship touched by illicit drug use. As a result of a physical altercation between Wilkins and Reichle, Wilkins was charged with and convicted of assault causing bodily injury–family violence.[2] The trial court assessed a sentence of 365 days' confinement in the Hunt County Jail. Wilkins appeals, claiming that the trial court erred by denying his motion for dismissal or, in the alternative, a continuance to investigate exculpatory evidence disclosed by the State during trial and that the evidence is legally insufficient to support his conviction. We affirm the judgment of the trial court because (1) the trial court did not abuse its discretion in denying Wilkins' motion to dismiss, (2) the trial court did not abuse its discretion in denying the motion for continuance, and (3) the evidence is legally sufficient to support Wilkins' conviction.

*Background*

Reichle and Wilkins used illicit drugs during their relationship, but had resolved to get their lives "straight" and stop using drugs. According to Reichle, the morning after the two made this

---

[1] In March 2007, Reichle was known as Jessica Whatley.

[2] Section 22.01 of the Texas Penal Code defines the offense of assault as "intentionally, knowingly or recklessly" causing "bodily injury to another, including the person's spouse." TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon Supp. 2009).

decision, Wilkins woke her up to invite her to use "meth"[3] with him.   Reichle was very upset and reminded Wilkins of their decision to stop using drugs.   In response to this protest, Wilkins went into the bathroom and shut the door.   When Reichle pushed the door open, Wilkins grabbed her by the back of the neck, told her he was going to drown her under the sink faucet, and then slammed the left side of her body into the wall.   Reichle testified that she experienced bruising on the left side of her body as well as bruising and scratches on her back and her left arm as a result of the altercation.   In addition, Reichle was burned in a small area below her left shoulder where Wilkins extinguished a cigarette.

Reichle ran outside for help and was able to call her mother, Rhea Petersen, with the use of a neighbor's cell phone.[4]   When Petersen arrived approximately fifteen minutes after receiving Reichle's call (between 7:00 and 8:00 that evening),[5] she observed a bruise on Reichle's cheek. To Petersen, it looked as if the bone had been broken.   Reichle had been crying, was irate, agitated, and very upset.

---

[3]Methamphetamine is "an amine $C_{10}H_{15}N$ used medically in the form of its crystalline hydrochloride especially in the treatment of obesity and often used illicitly as a stimulant – called also *methedrine*. . . ."   MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 781 (11th ed. 2003).

[4]Reichle testified that she did not have a car at the time of the assault.

[5]Reichle initially testified that she made the call to Petersen on the morning of March 12.   In subsequent testimony, Reichle stated that she did not know if it was morning, noon, afternoon, or night.

Petersen took Reichle to the Rains County Police Department where Officer John Wallace photographed Reichle's injuries and took her statement.[6]

Wilkins' account of the events of March 12, 2007, differs substantially from the testimony of Reichle and Petersen. According to Wilkins, he and Reichle were residing in the home of Wilkins' mother in Lone Oak. Wilkins testified that, on March 12, 2007, he and Reichle did not fight and he did not assault Reichle on that date or any other. Instead, Wilkins testified that Reichle went to visit Petersen on the evening of March 12 seeking financial assistance and seeking to arrange to visit her child.

Wilkins' narrative continued concerning an encounter between Reichle and Petersen and its aftermath. Reichle left in her own car at approximately 6:30 p.m. and returned to the trailer she shared with Wilkins at approximately 11:30 p.m. that same evening. When she returned, Reichle showed signs of having been injured. When Wilkins inquired about the injuries, Reichle told him that she and Petersen got into an argument over Wilkins, and Reichle called Petersen a "bitch." Petersen slapped Reichle and the "fight was on." After the fight, Petersen called the police, and both Petersen and Reichle claimed Wilkins caused the injuries.[7] Reichle came back for Wilkins because she did not want him arrested for something he did not do. She took him to a friend's house in Rolling Hills, where Wilkins stayed the night and smoked methamphetamine. Reichle

---

[6]Because the assault happened in Hunt County, Wallace contacted Hunt County Deputy Larry Proctor and arranged for Petersen and Reichle to meet with Proctor in Tawakoni later that evening to make a report.

[7]Wilkins testified that some of the marks on Reichle were not bruises, but were track marks from using needles.

4

then returned to Petersen's house. The following day, Wilkins returned to his mother's house where Reichle joined him. The two stayed together for approximately one week before Reichle moved out. In the weeks and months that followed, Wilkins did not contact law enforcement to clear his name because he was on drugs and did not care.

*(1)     The Trial Court Did Not Abuse Its Discretion in Denying Wilkins' Motion to Dismiss*

About a week before trial, Wilkins filed several discovery motions, including a motion for discovery and inspection of evidence, a motion for the production of exculpatory and mitigating evidence, and a motion to discover criminal records of witnesses. Each of these motions was granted on the date of trial, September 10, 2009.

During the lunch break at trial, the State produced Reichle's criminal record.[8] After having received the record, Wilkins presented a *Brady*[9] motion, claiming the criminal record contained exculpatory evidence which was not timely produced. According to argument of counsel, the record included a charge of assault against Reichle that occurred close to the time Wilkins was accused of committing the assault on Reichle. Because Wilkins denied commission of the assault, he contends that Reichle's altercation during the same time frame—demonstrated by the late-produced record—is exculpatory.

As a remedy for the late production, Wilkins asked for dismissal of the case against him.

---

[8]The document identified as Reichle's criminal record was not introduced as an exhibit at trial and is not a part of the record on appeal.

[9]*Brady v. Maryland*, 373 U.S. 83 (1963).

5

In the alternative, Wilkins asked for a continuance to permit him time to investigate the information contained in Reichle's criminal record. The court denied both motions, but permitted Wilkins to recall Reichle and Petersen to question each regarding the record in question.

Wilkins contends that the State's failure to disclose exculpatory evidence before trial violated his due process rights and that, as a result, the trial court erred in denying his "motion for sanctions resulting in dismissal."

The trial court's ruling on a motion to dismiss is subject to an abuse of discretion standard of review. *Williams v. State*, 464 S.W.2d 842, 844–45 (Tex. Crim. App. 1971); *State v. Hernandez*, 830 S.W.2d 631, 635 (Tex. App.—San Antonio 1992, no pet.). In considering whether the trial court abused its discretion, we must determine whether its ruling lies outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

Here, Wilkins sought the remedy of dismissal for the State's failure to timely produce allegedly exculpatory evidence. Wilkins cites no authority in support of his contention that dismissal is the proper remedy in this circumstance, and we find none.

We observe that, in the appropriate circumstance, mistrial can be an appropriate remedy for the failure to produce exculpatory evidence. *See, e.g.*, *Ex parte Masonheimer*, 220 S.W.3d 494, 507 (Tex. Crim. App. 2007). Wilkins did not seek a mistrial in this instance, just a dismissal. We decline to treat a motion to dismiss as a motion for mistrial, as the two are distinctly different

procedural vehicles. The defining feature of a mistrial is that the order contemplates further prosecution. *State v. Moreno*, 294 S.W.3d 594, 601 (Tex. Crim. App. 2009) (citing *Lee v. United States*, 432 U.S. 23, 30 (1977)). Wilkins sought dismissal after the jury was empanelled and sworn; thus, after jeopardy had attached. Further prosecution subsequent to dismissal would therefore be jeopardy-barred. *See State v. Manning*, 833 S.W.2d 322, 323 (Tex. App.—Waco 1992, no pet.) (citing *Crist v. Bretz*, 437 U.S. 28, 37–38 (1978)). Thus, the remedy sought by Wilkins was a dismissal of the charges against him with no opportunity for retrial. Conversely, the remedy of mistrial generally affords the opportunity for retrial.[10]

Because we find no abuse of discretion on the part of the trial court in its denial of Wilkins' motion to dismiss, we overrule this point of error.

*(2) The Trial Court Did Not Abuse Its Discretion in Denying the Motion for Continuance*

---

[10]In certain limited circumstances, the remedy of mistrial produces the same result as dismissal after jeopardy has attached. However, the narrow exception to the rule that the Double Jeopardy Clause is no bar to retrial after a mistrial does not apply here. That exception is limited to cases of governmental actions intended to provoke mistrial requests. *United States v. Tateo*, 377 U.S. 463, 468 n.3 (1964). Consequently, harassing or overreaching prosecutorial conduct, even if sufficient to justify a mistrial on a defense motion, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. *Oregon v. Kennedy*, 456 U.S. 667, 675–76 (1982). Thus, retrial after a defense-requested mistrial is jeopardy-barred only when "the prosecutorial conduct giving rise to the successful motion for a mistrial was intended to provoke [or goad] the defendant into moving for a mistrial." *Id*. at 679. Here, there has been no allegation of prosecutorial intent to provoke Wilkins to seek a mistrial, and the record reveals no evidence of such intent.

In this regard, we note that the trial court granted Wilkins' discovery motion on the morning of trial; the information was produced during a lunch break. This "tardy" production of impeachment evidence (it is far from clear that the evidence in question was indeed exculpatory) falls woefully short of the conduct necessary to invoke the narrow exception to the general rule that there is no jeopardy bar to retrial after a defense-requested mistrial. *See, e.g.*, *Masonheimer*, 220 S.W.3d 494 (under unique facts of this case, a third prosecution was jeopardy-barred when first two proceedings were terminated before final judgment on defendant's mistrial motions, provoked primarily by State's intentional failure to disclose exculpatory evidence with specific intent to avoid acquittal at first proceeding when defendant did not discover all exculpatory evidence until second proceeding).

7

Wilkins next contends that the trial court erred in failing to grant his motion for continuance, as an alternative to granting the dismissal motion, in order to afford the opportunity to investigate, possibly locate a new witness to the assault, and effectively cross-examine and impeach Reichle and Petersen. We disagree.

The decision on whether to grant a motion for continuance is left to the sound discretion of the trial court. *Wilson v. State*, 195 S.W.3d 193, 197 (Tex. App.—San Antonio 2006, no pet.). We, therefore, apply an abuse of discretion standard of review to the trial court's ruling. *Id.* To establish an abuse of discretion, there must be a showing that the defendant was actually prejudiced by the denial of his or her motion. *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996) (citing *Heiselbetz v. State*, 906 S.W.2d 500 (Tex. Crim. App. 1995)).

While Wilkins made an oral motion to dismiss at trial, there is no written, verified motion to dismiss in the record before this Court. Recently, the Texas Court of Criminal Appeals addressed this issue in *Anderson v. State*, No. PD-1441-08, 2009 WL 3837335 (Tex. Crim. App. Nov. 18, 2009). In that case, the State received a written report of DNA test results on the morning of trial. Before jury selection, the State gave Anderson's attorney the report after the lunch break. When he was unsuccessful in having the report stricken, Anderson's attorney made an oral request for a continuance, which was denied.

The court of appeals observed that generally, an unsworn oral motion for continuance preserves nothing for review, but recognized a "due process exception" to this rule, whereby an

appeal of an oral motion for continuance is permitted if denial of the motion amounts to a denial of due process.[11]   In overruling the court of appeals' determination that the trial court abused its discretion in failing to grant the motion for continuance, the Texas Court of Criminal Appeals first looked to the requirements for a motion for continuance set out in Articles 29.03 and 29.08 of the Texas Code of Criminal Procedure.   Article 29.03 states:   "A criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion.   A continuance may only be for as long as necessary."   TEX. CODE CRIM. PROC. ANN. art. 29.03 (Vernon 2006).

Article 29.08 states:   "All motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance."   TEX. CODE CRIM. PROC. ANN. art. 29.08 (Vernon 2006).

In holding there is no "due process" exception to the preservation requirements governing continuance motions in Articles 29.03 and 29.08 of the Texas Code of Criminal Procedure, the Texas Court of Criminal Appeals determined that, in making an unsworn oral motion for continuance, Anderson failed to preserve his claim.[12]   *Anderson*, 2009 WL 3837335, at *3.

---

[11]*Anderson v. State*, 268 S.W.3d 130, 133 (Tex. App.—Corpus Christi 2008), *rev'd*, No. PD-1441-08, 2009 WL 3837335 (Tex. Crim. App. Nov. 18, 2009).

[12]The court recognized that, when rules of procedural default come into play, the type of rule involved must be identified to determine whether it is subject to forfeiture.  *Anderson*, 2009 WL 3837335, at *2.  "A defendant's constitutional right to a meaningful opportunity to present a complete defense is rooted in the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process and Confrontation Clauses."  *Id.* (citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).  "Confrontation and compulsory process rights are subject to procedural default."  *Id.* (citing *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)).

Here, Wilkins likewise relies on a due-process argument to support his position that a continuance was required.   In light of the holding in *Anderson*, we find that in making an unsworn oral motion for continuance, Wilkins has preserved nothing for review on this issue.[13]   The trial court did not abuse its discretion in overruling Wilkins' unsworn, oral motion for continuance.[14]

*(3)      The Evidence Is Legally Sufficient to Support Wilkins' Conviction*

In his second point of error, Wilkins complains that the evidence is legally insufficient to show beyond a reasonable doubt that he caused Reichle's injuries.   This point of contention is based on the premise that, while the testimony of Reichle and Petersen point to Wilkins as the person who assaulted Reichle, the tardily produced evidence of the assault charge against Reichle by Petersen calls into question the identity of the person who committed the assault.   This evidence, he contends, gives rise to an inference that Reichle's injuries were caused by Petersen in a separate altercation.

In determining the legal sufficiency of the evidence, we view all the evidence in the light

---

[13]Like many other rights, the right to timely disclosure of exculpatory evidence may be lost by procedural default. *Wilson v. State*, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999).

[14]Even if error had been preserved, the outcome here would not differ.   When, as in this case, the evidence in question is discovered during trial, the initial inquiry is whether the appellant was prejudiced by the delayed disclosure. *Palmer v. State*, 902 S.W.2d 561, 565 (Tex. App.—Houston [1st Dist.] 1995, no writ).   To show prejudice, Wilkins would be required to show a reasonable probability that, had the evidence been disclosed to the defense earlier, the result of the proceeding would have been different. *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999). Wilkins has made no such showing, and none appears.   On the contrary, Wilkins was able to effectively use the tardily produced evidence at trial, and the jury was able to use the testimony of Reichle and Petersen (regarding Reichle's criminal history report) in assessing the credibility of those witnesses.   Therefore, even if Wilkins' unsworn oral motion for continuance had been sufficient to preserve this point for review, we cannot say the delay encountered in production of the requested information undermines our confidence in the outcome of the trial.

10

most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We defer to the jury on determinations of the credibility of witnesses and the weight to be accorded conflicting evidence. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

Here, the jury was able to weigh the credibility of Wilkins, Reichle, and Petersen with the benefit of the knowledge of Reichle's criminal history. We defer to the jury's determination of credibility questions and the weight to be accorded conflicting evidence. When viewing all of the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Accordingly, we overrule this point of error.

We affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice


Date Submitted:     March 1, 2010
Date Decided:       March 9, 2010

Do Not Publish

11