

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-187-CR

ISAAC TRANEIL MCDADE                                          APPELLANT
A/K/A ISSAC MCBRIDE

V.

THE STATE OF TEXAS                                               STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

A jury convicted Appellant Isaac Traneil McDade a/k/a Isaac McBride of theft of a motor vehicle valued at more than $20,000 but less than $100,000, and the trial court sentenced McDade to twenty years' confinement. In four issues, McDade argues that the evidence is legally and factually insufficient to

---

[1] *See* TEX. R. APP. P. 47.4.

support his conviction and that his due process rights were violated by an impermissibly suggestive pretrial procedure used to identify him and by the State's failure to disclose material, exculpatory evidence before trial. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Zach McCoy and Thomas Kelley were remodeling a maternity store located in Fort Worth on March 13, 2007. They were locking the entrance to the store sometime between 4:30 and 5:00 p.m. when they noticed someone drive off in Kelley's truck, which Kelley had parked about forty yards away and left running. Kelley chased the truck on foot briefly but was unable to catch up to it. McCoy jumped into his vehicle, commenced following Kelley's truck, called 911, and explained to the 911 operator what was happening as he pursued the truck. Kelley reported the incident to the police too.

McCoy followed Kelley's truck into an Albertson's parking lot located near the West Freeway, pulled in behind the truck, which the driver had just parked, exited his vehicle, and confronted the driver. McCoy was able to get a look at the driver, who he identified at trial as McDade. McCoy told McDade that he was going to jail, but McDade struck McCoy several times, giving McCoy a busted lip and five or six knots on his head. McCoy was "completely disoriented" and "knocked out" "for a minute or so" before he awoke to the

2

911 operator calling him back. McCoy observed McDade running towards the Albertson's store; however, he did not see McDade enter the store.

Officer White arrived at the Albertson's parking lot soon after McCoy's confrontation with McDade. Officer White observed that McCoy had cuts on his bloody face and was out of breath and "excited," "pumped up," and "pretty shook up." McCoy gave Officer White McDade's description, which was a black male, about 5'9" to 5'11" tall, and wearing a black shirt, black pants, and white athletic shoes. Officer White advised other officers of the description and called an ambulance.

Officer Ochoa arrived at the scene about six minutes after Officer White. He went to the Albertson's to look for McDade. Officer Ochoa checked the bathroom and saw a male in a stall matching McDade's description. Officer Ochoa exited the bathroom, called for assistance, and waited with two other officers outside of the bathroom. After about ten minutes, the officers entered the bathroom, observed McDade exiting the stall or washing his hands, and detained him.

In the meantime, officers had detained another individual at a nearby bus stop, but McCoy, who was fully conscious and coherent, said without hesitation after seeing him that the person was the wrong individual. About twenty minutes after the ambulance arrived, officers showed up with McDade,

3

whom McCoy identified without hesitation as the individual who had taken Kelley's truck. McDade had fresh-looking cuts and scrapes on his knuckles.

A few days after the incident, Officer Barron showed McCoy a photographic spread that included McDade's photo. McCoy was unable to identify McDade in any of the photos. Officer Barron did not include this information in the police report. Officer Barron testified that Kelley's truck was worth $25,500 at the time of the incident.

### III. LEGAL AND FACTUAL SUFFICIENCY

McDade argues in this first two issues that the evidence is legally and factually insufficient to support his conviction. However, he challenges the sufficiency of the evidence only as it relates to his identification as the individual responsible for the motor vehicle theft.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate

4

facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

We may not simply substitute our judgment for the fact-finder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is

5

appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9.

Here, the evidence demonstrates that McCoy followed Kelley's truck from the location where it was taken all the way to the Albertson's parking lot. McCoy parked his vehicle behind Kelley's truck and confronted McDade, who had just started to walk away. McCoy spoke briefly with McDade, telling him that he was going to jail and that he should just "hang out." The prosecutor asked McCoy if this was "the first time that [he] had really got to look at who it was driving your friend's pickup truck?" McCoy responded, "Yes, sir, it was." About twenty minutes after the ambulance had arrived, McCoy identified McDade as the individual responsible for taking Kelley's truck. McCoy identified McDade without hesitation, stating, "that's him," four or five times in rapid succession. McCoy's unwavering and unequivocal, positive identification of McDade came after McCoy had told officers that another individual that they had detained was not the person responsible for taking

6

Kelley's truck. McCoy also suffered injuries to his head from his confrontation with McDade, and McDade had cuts and scrapes on his knuckles.

In challenging the evidence supporting McCoy's identification of him as the person responsible for taking Kelley's truck, McDade points to evidence that McCoy was "completely disoriented" and "knocked out" briefly before he awoke to the 911 operator calling him back. He also directs us to evidence that McCoy was unable to identify McDade from the six-man photographic spread he viewed two days later. McCoy, however, was fully conscious and fully coherent when he identified McDade, and McCoy was unable to positively identify McDade in the photographic spread—which included photographs that all "looked pretty much identical" to him—because he was unsure which photo was McDade's, not because the photograph of the person who took Kelley's truck was not included in the spread. We are required to defer to the jury's determination of the weight to be given contradictory testimonial evidence unless the record clearly reveals that a different result is appropriate. *Johnson*, 23 S.W.3d at 8. Considering the evidence above, the record here does not clearly reveal that a different result is appropriate; we therefore defer to the jury's implied determination that McCoy correctly identified McDade as the individual responsible for the motor vehicle theft.

7

Viewing the evidence in the light most favorable to the verdict, we hold that the evidence is legally sufficient to support McDade's conviction for theft of a motor vehicle valued at more than $20,000 but less than $100,000. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. Moreover, viewing the evidence in a neutral light, we hold that the evidence is factually sufficient to support McDade's conviction. *See Watson*, 204 S.W.3d at 414; *Drichas*, 175 S.W.3d at 799. Accordingly, we overrule McDade's first and second issues.

### IV. IMPERMISSIBLY SUGGESTIVE IDENTIFICATION

In his third issue, McDade argues that the procedure by which McCoy first identified him as the individual who took Kelley's truck—handcuffed, surrounded by police officers, and presented to McCoy alone—was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. Consequently, he argues that his pretrial identification should have been excluded because the procedure used denied him due process.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied,* 526 U.S.

8

1070 (1999). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

Here, McDade failed to assert an objection or file a motion challenging both McCoy's and Officer White's testimony that McCoy identified McDade on March 13, 2007, as the individual responsible for taking Kelley's truck. McDade has thus forfeited this complaint because he did not raise it at trial. *See* TEX. R. APP. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249 at 265; *Brown v. State*, No. 01-02-00856-CR, 2003 WL 1937207, at *4 (Tex. App.—Houston [1st Dist.] Apr. 24, 2003, no pet.) (mem. op.) (not designated for publication) (holding that appellant waived issue of whether identification procedures used by police were impermissibly suggestive or whether in-court identification of appellant was tainted by out-of-court procedures); *Coffee v. State*, No. 03-98-00337-CR, 1999 WL 958966, at *2 (Tex. App.—Austin Oct. 21, 1999, no pet.) (not designated for publication) (holding that appellant failed to preserve for appellate review arguments regarding in-court identification stemming from impermissibly suggestive pretrial show-up). We overrule McDade's third issue.

9

## V. Exculpatory Evidence

McDade argues in his fourth and final issue that his due process rights were violated because the State committed a clear *Brady* violation by failing to disclose material, exculpatory evidence before trial: McCoy's inability to identify him in a photographic spread two days after the incident occurred.

The State has an affirmative duty to disclose exculpatory evidence that is material either to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). The State's duty to reveal Brady material attaches when the information comes into its possession, not when it is requested. *Thomas v. State*, 841 S.W.2d 399, 407 (Tex. Crim. App. 1992). To establish a due process violation under Brady, a defendant must show the following: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defendant; and (3) the suppressed evidence was material to either guilt or punishment. *Fox v. State*, 175 S.W.3d 475, 490 (Tex. App.—Texarkana 2005, pet. ref'd).

When the *Brady* material is discovered during trial, the initial inquiry is whether the appellant was prejudiced by the delayed disclosure. *Palmer v. State*, 902 S.W.2d 561, 565 (Tex. App.—Houston [1st Dist.] 1995, no pet.); *see also Little v. State*, 991 S.W.2d 864, 867 (Tex. Crim. App. 1999) (reasoning that to prevail on a *Brady* claim, the appellant must show that the

State's tardy disclosure prejudiced the appellant). To show prejudice, the appellant must show a reasonable probability that, had the evidence been disclosed to the defense earlier, the result of the proceeding would have been different. *Little,* 991 S.W.2d at 866. The disclosure of *Brady* material during trial satisfies the requirements of due process "[i]f the defendant received the material in time to put it to effective use at trial." *Palmer*, 902 S.W.2d at 565. A defendant's conviction should not be reversed simply because the *Brady* material was not disclosed as early as it might have and should have been. *Id*.

Here, the undisclosed information was revealed early in the trial when the prosecutor questioned McCoy, who was the first State's witness to testify, about the photographic spread that he viewed a few days after the incident. McDade's attorney cross-examined McCoy about the circumstances surrounding his viewing of the photographic spread. Later in the trial, the State questioned Officer Barron about the photographic spread too. McDade's attorney cross-examined Officer Barron, who testified that he showed McCoy the photographic spread and that he did not include the fact that McCoy was unable to identify McDade's photograph in the police report because McCoy had already identified McDade on the scene a few days earlier. McDade's attorney further utilized the State's failure to disclose McCoy's inability to identify McDade in the photographic spread during his closing argument.

11

The record thus shows that the undisclosed information came to light at such a time that McDade was able to put it to effective use at trial. Considering this and the fact that McCoy positively and unequivocally identified McDade on a previous occasion, McDade has failed to show that there was a reasonable probability that, had the evidence been disclosed earlier, the result of the trial would have been different. *See Little,* 991 S.W.2d at 866. Moreover, McDade failed to request a continuance when McCoy testified about the previously undisclosed information, which further tends to demonstrate that the State's delay in disclosing the photographic spread information was not prejudicial. *See Apolinar v. State*, 106 S.W.3d 407, 421 (Tex. App.—Houston [1st Dist.] 2003), *aff'd on other grounds*, 155 S.W.3d 184 (Tex. Crim. App. 2005) (stating that a defendant's failure to request a continuance when *Brady* material is disclosed at trial waives error or indicates that the delay in receiving the evidence was not truly prejudicial). We hold that McDade's due process rights were not violated by the State's delay in disclosing McCoy's inability to identify McDade in a photographic spread. Accordingly, we overrule McDade's fourth issue.

## VI. CONCLUSION

Having overruled all of McDade's issues, we affirm the trial court's judgment.

DIXON W. HOLMAN
JUSTICE

PANEL B:  LIVINGSTON, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED: June 5, 2008

13