Tami Kaylo Reed COHEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–96–372 CR.

Court of Appeals of Texas,
Beaumont.

Submitted Sept. 18, 1997.

Decided March 25, 1998.

Discretionary Review Refused
July 8, 1998.

Richard D. Hughes, Provost & Umphrey, Port Arthur, for appellant.

Tom Maness, Criminal Dist. Atty., Rodney D. Conerly, Asst. Crim. Dist. Atty., Beaumont, for state.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

This is an appeal from the denial of a writ of habeas corpus. For a full understanding of the issues presented, a description of pertinent events is in order. On September 29, 1986, Robert Reed, a local attorney, was murdered at his office located in Port Arthur, Jefferson County. Subsequently, appellant and her paramour, Mitch Roy Little, were indicted for the murder. In January 1987, appellant's indictment was dismissed at the request of the State. The reason given for dismissal was listed as "insufficient evidence at this time."

The State proceeded with the prosecution of Mitch Little and in June of 1987, he was convicted for the murder of Robert Reed. Prior to the start of the punishment phase of the trial, Little received an offer from the State for thirty (30) years' confinement in the penitentiary in exchange for incriminating testimony against appellant. Little was generally agreeable to the deal but told prosecutors that any testimony by him incriminating appellant would essentially be perjured testimony. The State promptly withdrew the offer and Little was subsequently sentenced to life.

In December of 1993, the State once again secured an indictment against appellant for the murder of Robert Reed. The impetus for appellant's re-indictment was the fact that in May of 1993, Mitch Little provided a written statement to Investigators Tim Smith and Mitch Woods of the Jefferson County District Attorney's Office implicating appellant in the murder of Reed. As the uncontroverted facts of the case indicated that appellant was in the hospital the night of Reed's murder, the State's theory of the case was that appellant was guilty as a party to her husband's murder by supplying Mitch Little with the key to enter Reed's locked office during the evening hours of September 29, 1986.

After a year's delay, appellant's trial commenced on December 12, 1994, with appellant entering a not guilty plea before a jury. A variety of witnesses were called by the State. When Mitch Little was called to testify, he initially refused to testify invoking instead his Fifth Amendment right against self-incrimination. When Little was given a grant of immunity at the request of the State, his only response to subsequent questioning was, "I will not testify at this trial unless the State complies with the agreements that they made with me." Little was held in contempt of court and sentenced to jail.

On the evening of January 9, 1995, some nineteen days into the trial, after appellant had rested her case-in-chief and during the State's case in rebuttal, the State tendered to appellant offense reports, notes, and witness statements prepared or taken by Investigators Smith and Woods. Smith and Woods were to be called as witnesses the following morning for the purpose, *inter alia*, of introducing into evidence, over appellant's objections, the October 1993 written statement of Mitch Little implicating appellant in the murder of Reed. Prior to the trial recommencing, a hearing was held outside the jury's presence. At this hearing, appellant informed the trial court that the material provided by the State the day before contained previously unknown and undisclosed exculpatory evidence. The trial court listened to the explanations by the State and the legal arguments from both parties. Appellant insisted that the only remedy was for the trial court to grant a mistrial so that appellant could have the chance to fully and completely investigate the possibility, allegedly raised by the previously undisclosed reports, that one of the State's star witnesses, Cyd Marie Badon, the sister of Mitch Little, was the previously unidentified woman seen at Reed's office on the night of the murder, and who also allegedly had access to the key to Reed's office. The trial court agreed with appellant that the material in question was exculpatory in na-

ture but raised the possibility of a lesser remedy for appellant such as a continuance. Appellant's attorney was adamant that in total fairness to his client a mistrial was the only alternative. The trial court granted the appellant's motion and a mistrial was declared.

Prior to the scheduling of the second trial, appellant filed a pretrial Application for Writ of Habeas Corpus contending that further prosecution of appellant for the murder of Reed was barred under the double jeopardy provisions of the United States and Texas constitutions. An extensive evidentiary hearing was held on the issue in August of 1995. At the conclusion of the hearing, the habeas court orally denied appellant's requested relief. The habeas court then requested both parties to submit proposed findings and conclusions so as to assist it in drafting a written order. Appellant's proposed findings and conclusions were filed on December 1, 1995, with a brief supplement filed on October 16, 1996. The State filed its proposed findings and conclusions on September 24, 1996. The habeas court signed its written order denying appellant's requested relief on October 31, 1996, and filed its written findings and conclusions on November 4, 1996.

Appellant raises three points of error for our consideration, *viz:*

Point of Error I: It was error and clearly erroneous for the habeas judge to find that the prosecution's failure to produce exculpatory evidence until late in trial was not intended to goad defendant to request a mistrial and, on such basis, to rule that appellant's second prosecution is not jeopardy barred by the United States Constitution or Texas Constitution.

Point of Error II: It was error and clearly erroneous for the habeas judge to find that the prosecution's failure to produce exculpatory evidence until its rebuttal case at trial was not the conscious disregard of risk that the defendant would be compelled to ask for a mistrial and, on such basis, to rule that appellant's retrial is not barred under the double jeopardy provisions of the Texas Constitution.

Point of Error III: It was error and clearly erroneous for the habeas judge to rule that appellant's retrial was not jeopardy barred by the Texas Constitution based on her conclusion that the Texas Court of Criminal Appeal's [sic] recent decision in *Bauder v. State,* holding that a second prosecution is barred after the defendant's request for mistrial when the prosecutor is aware but consciously disregards the risk that an objectionable event would require a mistrial, did not apply here because the prosecutor's objectionable actions did not occur in the actual presence of the jury.

■ We will combine discussion and resolution of the three points of error. The general rule in habeas hearings is that while we are not bound by the findings of fact and conclusions of law of the habeas court, we generally defer to them if they are supported by the record. *Ex parte Davis,* 957 S.W.2d 9, 13 (Tex.Crim.App.1997). We now set out what we feel are the pertinent findings of fact and conclusions of law by the habeas judge.

### FINDINGS OF FACT

28. That Judge Gist's granting of the mistrial January 10, 1995, was not improvidently granted, but was properly done to assure fairness and efficiency in the trial process. Further, it is apparent that should the trial have continued to conclusion and the Defendant convicted, the case would have been reversed on appeal.

29. That the requests contained in the Defense's pre-trial motions, including the Motion for Production of Evidence, imposed upon the State the duty to disclose the information discussed above; that they had an affirmative duty to do so.

. . . .

31. That the complained of State's conduct or omissions arose outside the presence of the jury.

32. That the disclosure of the Woods and Smith reports was made because the State intended to call Woods and Smith to testify about securing Little's confession.

33. That the tender of the Woods and Smith reports to the defense during rebut-

tal is indicia that the State's earlier failure to disclose this material was not an intentional act of concealment.

34. That Smith's report is a chronicle of past events, not a contemporaneous recording of events; it could be construed as work product, not ordinarily discoverable and the prosecutors may not have had the duty to disclose it at the time it was tendered, is further indicia of the State's lack of sinister motive.

35. That Little's written confession had been ruled admissible.

36. That prosecutor Batte's opinion was that the case was won because the confession was ruled admissible and Little was not subject to cross-examination.

37. That Batte's opinion at the rebuttal state of the trial was the only way the Defendant could escape conviction would be by mistrial; he further testified "absolutely no way I would want a mistrial." Further, that he would rather have the jury acquit the Defendant than try the case again.

38. That McWilliams stated he read the State's file three or four times and there is nothing in the Seal or DeRouen statements he should produce to the defense.

39. That Batte testified he today would not provide Seal's or DeRouen's statements because he does not believe them to be exculpatory and that "I've spoke [sic] with prosecutors throughout the State and I have met not one who would agree (Seal's statement) is exculpatory".

40. That after reviewing all the trial on the merits, and habeas corpus hearing testimony, the Court makes these further factual findings that the prosecution's failure to produce evidence was:

A) Not the result of overreaching, knowing, intentional bad faith or result-indifferent conduct;

. . . .

C) Not calculated to deliberately or recklessly provoke or "goad" a mistrial;

D) Not intended to undermine the protection of the Federal and State Double Jeopardy Clauses;

E) Not the conscious disregard of risk that the State would be responsible for compelling the Defendant to request a mistrial; and

F) Error caused by the State's disbelief or lack of recognition that the nature of the aforementioned evidence was exculpatory, impeachment or favorable to the Defendant.

## CONCLUSIONS OF LAW

4. The controlling federal case is *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) which stands for the proposition that when the Double Jeopardy Clause is invoked in the instance where a mistrial is declared at the request of the Defendant, retrial is not barred unless the prosecution's "... conduct in question is intended to goad the Defendant into moving for a mistrial ..." (456 U.S. at 676, 102 S.Ct. at 2089).

. . . .

7. The Texas Court of Criminal Appeals has "Heitmanized" double jeopardy in *Bauder v. State*, 921 S.W.2d 696, (Tex. Crim.App. May 1996) (previous opinions withdrawn).

. . . .

9. *Bauder* asserts an independent state standard, "under slightly more expansive conditions than those allowed by the United States Supreme Court", holding that "... a successive prosecution is jeopardy barred after declaration of a mistrial at the Defendant's request ... when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the Defendant's request." (*Bauder v. State*, 921 S.W.2d 696 at 699).

. . . .

11. *Bauder* was decided on actions arising in the presence of the jury—the habeas judge found the prosecuting attorney had deliberately adduced objectionable testimony for the purpose of prejudicing the Defendant before the jury, but not for the purpose of goading for a mistrial (at 697).

. . . .

14. This habeas judge concludes the distinction between events which arose in the presence of the jury, and those events which arose outside the jury is vital.

Events in the jury's presence which occasion a mistrial are in effect contumacious acts; thus, reckless disregard is an appropriate standard.

Events arising outside the jury should be tested to determine if overreaching is present. However, in this case the Court has found error, not reckless disregard.

It is inimical to the best interest of justice to equate a due process violation as a constitutional bar to retrial.

15. An analogous case is *Ex parte Mitchell*, 853 S.W.2d 1, where the Court found Applicant's right to due process was violated by the State's suppression of exculpatory and material information which was in its possession. The Court applied the three-prong test enunciated in *Thomas v. State*, 841 S.W.2d 399 at 4[sic]. Judgment was vacated and Applicant remanded to custody to answer the indictment.

. . . .

### RULING OF COURT

Based upon the foregoing Findings of Fact and Conclusions of Law, the Court hereby denies the relief sought. Applicant is ordered to answer the indictment in Cause No. 65,835.

### THE STATE'S DUTY TO DISCLOSE

Since the alleged prosecutorial misconduct at trial consisted of the failure by the State to timely provide appellant with investigative reports containing information that was exculpatory, or at least favorable to appellant's defense, we set out the law on this issue. The prosecution's affirmative duty to provide exculpatory, impeachment, or other evidence favorable to a defendant is usually identified with the case of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Since *Brady*, the Supreme Court has continued to evolve the State's duty to disclose such evidence. *See, United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *United States v. Bagley*, 473 U.S.

667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). *Brady* held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, regardless of the good faith or bad faith of the prosecution. *Brady*, 373 U.S. at 87, 10 L.Ed.2d at 218. In *Bagley*, the Court disavowed any difference between exculpatory and impeachment evidence for *Brady* purposes and held, regardless of whether an accused makes a request or not, favorable evidence *is material*, and constitutional error results from its suppression if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Bagley*, 473 U.S. at 676, 682, 105 S.Ct. at 3383–84, 87 L.Ed.2d at 490, 494. *Kyles* further extended *Brady* to include disclosure of any favorable information in the possession of police agencies and other parts of the "prosecutorial team." *Kyles*, 514 U.S. at 437–40, 115 S.Ct. at 1567–69, 131 L.Ed.2d at 508–10. It must be noted that in each case the defendant's *due process* right to a fair trial was violated and the remedy prescribed in each instance was a reversal and remand to the trial court for further proceedings.

### FEDERAL DOUBLE JEOPARDY ISSUE

Because appellant properly raises separate claims under both the federal and state constitutions, we must provide separate analysis and discussion for each. Both parties recognize *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), as the seminal case on this issue. In *Kennedy*, the Supreme Court held that the circumstances under which a defendant, who successfully moves for a mistrial, may thereafter invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for mistrial was intended to provoke or "goad" the defendant into moving for the mistrial. *Id.*, 456 U.S. at 676, 102 S.Ct. at 2089–90, 72 L.Ed.2d at 425. Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on a defendant's motion, will not bar

retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. *Id.,* 456 U.S. at 675–676, 102 S.Ct. at 2089–90, 72 L.Ed.2d at 424.

■ In the instant case, the habeas court's finding that the State's failure to produce the investigative reports in question was not calculated to deliberately provoke or "goad" the appellant into securing a mistrial is supported by the record. Prosecutors Batte and McWilliams testified that they were confident that they were in a position to secure a conviction as they were about to introduce Mitch Little's written statement before the jury which apparently fully implicated appellant in the murder of her husband. Furthermore, the fact that both Batte and McWilliams were both mistaken as to the favorable nature of the investigative reports, and were therefore in violation of *Brady,* was characterized as "error" by the habeas court. Such "error," "even if sufficient to justify a mistrial on a defendant's motion, will not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." *Kennedy,* 456 U.S at 675–676, 102 S.Ct. at 2089, 72 L.Ed.2d at 424. The habeas court did not err in denying the relief sought on federal Double Jeopardy grounds.

### STATE DOUBLE JEOPARDY ISSUE

■ The habeas court correctly identified *Bauder v. State,* 921 S.W.2d 696 (Tex.Crim. App.1996) as the leading Texas case on the issue of barring retrials following a mistrial based upon prosecutorial misconduct. So as to avoid any confusion, we will quote the specific holding in *Bauder* which deals with the issue directly before us.

We therefore hold that a successive prosecution is jeopardy barred after declaration of a mistrial at the defendant's request, not only when the objectionable conduct of the prosecutor was intended to induce a motion for mistrial, but also when the prosecutor was aware but consciously

disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request. Under this rule, the prosecutor is not accountable for mistrials when the trial judge need not have granted the defendant's motion.

*Id.* at 699.

■ At the outset, we feel compelled to point out that the *Bauder* court's holding appears to require an initial finding that the mistrial was properly granted by the trial court; otherwise the prosecutor is not to be held accountable for the mistrial. The habeas court, in Findings of Fact 28, found that the trial court's granting of the mistrial was proper. In actuality, this is a Conclusion of Law as the habeas court filtered a set of facts into the law on the State's duty to disclose. A duty to disclose is a due process issue, as opposed to a double jeopardy issue, when a defendant's conviction is reversed after a full trial on the merits.[1] *See Ex parte Davis,* 957 S.W.2d at 14; *Cook v. State,* 940 S.W.2d 623, 627 (Tex.Crim.App.1996) (prosecutorial misconduct involving withholding of *Brady* evidence from the defense violated defendants's rights under the Due Process Clause of the United States Constitution, as well as under the due course of law provision of the Texas Constitution—Tex. Const. art. I, §§ 13 and 19). The Court in *Ex parte Davis* explained it thusly:

It has long been the law that where a defendant's due process rights have been violated to the extent that he has been denied a fair trial, the proper remedy is reversal of his conviction and remand of the cause to the trial court for further proceedings. *Brady v. Maryland, supra; Kyles v. Whitley, supra; United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). We decline applicant's invitation to extend our interpretation of the Texas Constitution's double jeopardy protections in *Bauder* to instances like the present case which involve due process concerns for which the well-estab-

---

1. We believe the habeas court wrestled with this distinction as its Conclusions of Law 14 and 15 seem to indicate. We will attempt to explain the appropriate legal applications of the Due Course of Law and Double Jeopardy protections under the somewhat unique procedural circumstances faced by the habeas court.

lished remedy of reversal is intended to address. *Bauder* applies only where a mistrial has been granted due to reckless or intentional prosecutorial misconduct; therefore it does not apply to the present case as no mistrial was granted and we further find no abuse of discretion on the part of the trial court in its denial of applicant's mistrial motion.

957 S.W.2d at 14–15.

In the instant case, since a mistrial was declared halting the proceedings before a verdict could be reached, the legal standards announced in *Bauder* are applicable to our analysis. We reiterate the fact that under *Bauder* our initial inquiry is whether or not the trial court should have granted the mistrial because if the mistrial was not proper, the State cannot be held accountable for its occurrence. *Bauder,* 921 S.W.2d at 699. As alluded to in our recitation of events at the beginning of this opinion, the trial court, prior to declaring the mistrial but recognizing that the State did violate its duty under *Brady* and its progeny, raised the possibility of a less drastic remedy than declaring a mistrial. The colloquy between the trial court and the parties transpired as follows:

THE COURT: Now, that doesn't end the inquiry.

Everyone [sic] of the cases that I have been able to find deal with the granting of new trials when exculpatory evidence was not disclosed and that was shown on appeal or by motion for new trial.

What we've got here, at least as I see this, is what I believe to be exculpatory evidence that was not disclosed and now it has been.

The defense is in a much better position than the Defendant would be had the case gone to conviction and then we'd be redoing this or somebody would on some kind of post conviction proceedings.

Mr. [Trial Counsel], you've asked for a mistrial. You're saying that's the only remedy that you want. The thrust of everything that I can find drives me to the conclusion that the least intrusive remedy ought to be addressed first and the most intrusive last. And I'm wondering if

there's any remedy short of a mistrial that may address your concerns.

I'd like to know what you think about that. I'd like to know what the District Attorney thinks about that. Is there any remedy that you now have this, you now have whatever those other things were, assuming without concluding that they are exculpatory. I don't acquiesce in that and I don't dispute it, I just haven't—I'm not that familiar with it.

[Trial Counsel]: Of course, your [sic] Honor, I disclosed exculpatory evidence as soon as it was given to us. I don't feel like our client ought to be in a worse position than she would be if we did not disclose it. I know that you're not intimating that.

THE COURT: No, no, no.

[Trial Counsel]: You're just saying the cases say that exculpatory evidence was not given and later discovered requiring a new trial.

But we're at the stage, your [sic] Honor, we're on the twentieth day of trial. There have been many delays. My client has gone—She has been down here since December 1. Additional delay, your [sic] Honor, is just—this case is off track. It's going to jeopardize my client.

. . . .

[Trial Counsel]: My position is, is that my client at this stage, your [sic] Honor, on the twentieth day after all of this, is requesting a mistral [sic]; start this case over, if that's what the prosecution wants to do.

[The State]: And I'm sorry, your [sic] Honor, I think I referred to him as the husband. I've been told that's—that Sam Seals is Willene Seals' son. So, I'm sure in talking to Mrs. Seals we can find out where he is.

[Trial Counsel]: Judge, to go forward on even that new evidence and redo the defensive theories at this stage, to redo all of that, is going to be adverse to the whole trial to back up and go through all witnesses in light of this possibility, to recall everyone of them and talk about these things, not everyone of them, but the ones that would have something material to of-

fer on this is rehashing this entire trial and the Defendant—

THE COURT: Well, the fact that it's laborious or inconvenient is not persuasive to me on anybody's part. I mean, that doesn't sell. The question is one of trying to meet the requirements at least in my mind of the law and the—it's—why would it be adverse to you to at least try to see if you might be in a position to meet this evidence at this stage. I mean right now we're all speculating. Nobody knows where this fellow is at or even if he's around or whether he's dead or anything else that's involved.

[Trial Counsel]: Because I have taken a position in front of this Court and this jury, a defensive theory, based upon the evidence that was available.

THE COURT: Which is, please?

[Trial Counsel]: Which is that their theory was—is that Mitch Little walked in there with a key presented from her. That's been the whole line of the questioning that that didn't stay [sic] place. And now we're going to have to jump to a theory that somebody else was involved in this and that is going to make our credibility in front of the jury terrible because now we're going to change theories on what happened here, of what could have happened.

[The State]: I'm sorry, your [sic] Honor, I don't follow that. I think the defensive theory has always been that Tami Cohen didn't have anything to do with this. And somebody else giving Mitch the key certainly fits with that theory.

It has been held that when the State fails to disclose *Brady* material until *after* the trial has commenced, the inquiry is whether the defendant was prejudiced by the tardy disclosure; "[i]f the defendant received the material in time to put it to effective use at trial, his conviction should not be reversed simply because it was not disclosed as early as it might have and, indeed, should have been." *See Palmer v. State,* 902 S.W.2d 561, 565 (Tex.App.—Houston [1st Dist.] 1995, no pet.)(quoting *United States v. McKinney,* 758

F.2d 1036, 1050 (5th Cir.1985)). The Waco Court of Appeals expanded on *Palmer* and *McKinney* by subsequently holding that the disclosure of *Brady* material at trial gives the accused an opportunity to request a continuance to review the evidence, and this opportunity adequately satisfies the due process requirements of*Brady.* *See Yates v. State,* 941 S.W.2d 357, 364 (Tex.App.—Waco 1997, pet. ref'd). The Waco Court concluded that the failure to request a continuance waives any *Brady* violation. *Id.*

In the instant case, while the law controlling our decision rests firmly in Double Jeopardy as discussed in *Bauder,* the law before the trial court at the time it declared the mistrial was based upon the Due Process requirements announced in *Brady* and its progeny. *Bauder* was very clear in emphasizing that mistrials are an extreme remedy:

> [M]istrials are an extreme remedy for prejudicial events occurring during the trial process. Even when a prosecutor intentionally elicits testimony or produces other evidence before the jury which is excludable at the defendant's option, our law prefers that the trial continue.... The adversary system thus depends upon a belief that the declaration of a mistrial ought to be an exceedingly uncommon remedy for the residual prejudice remaining after objections are sustained and curative instructions given.

*Id.* at 698.

Taken from this perspective, the holding of the Waco court seems eminently reasonable under the circumstances in the record before us as the jury was not exposed to any misconduct on the part of the State. We therefore adopt the Waco court's holding that in cases where mid-trial *Brady* violations occur, a defendant must first request a continuance in order to investigate the previously undisclosed evidence favorable to the defense.[2] A defendant who fails to avail himself of this less drastic remedy waives any error resulting from the *Brady* violation. It is only when a trial court denies a request for continuance based on a *Brady* violation

---

2. Explanatory instructions to the jury may also be in order under certain circumstances so that

any delay in the proceedings do not enure to the defendant's detriment.

that a defendant may follow with a request for a mistrial.

All of this is to say that in light of the authority discussed above we find the mistrial in the instant case to have been untimely. A continuance should have been requested by appellant. We will not speculate whether or not a mistrial may have ultimately been proper after an investigation into the information provided in the undisclosed investigative reports. Since we find the mistrial to have been unnecessary, the State could not be held accountable for it. We need not therefore make a determination as to whether the State's failure to disclose the investigative reports in question was done recklessly. The habeas court did not err in denying relief sought on state double jeopardy grounds. Appellant's points of error one and two are overruled.

As we have no need to classify the conduct of the State in failing to disclose the reports, appellant's third point of error, which has its basis in the habeas court's finding that because the State's conduct did not occur before the jury, *Bauder* does not apply, is sustained only insofar as we recognize that *Bauder* does indeed control our decision. The third point of error is overruled in all other respects. For the reasons discussed above, we affirm the habeas court's denial of appellant's request to bar her further prosecution in Cause No. 65,835.

AFFIRMED.