NO. 07-08-0141-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JULY 9, 2008

______________________________


ASBESTOS MAINTENANCE SERVICES, INC., APPELLANT

V.

HUTCHINSON COUNTY, APPELLEE


_________________________________

FROM THE 84TH DISTRICT COURT OF HUTCHINSON COUNTY;

NO. 35,525; HONORABLE DAVID GLEASON, JUDGE

_______________________________

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.
MEMORANDUM OPINION
          Pending before this Court is Asbestos Maintenance Services, Inc.’s Motion to
Dismiss Appeal. We grant the motion. See Tex. R. App. P. 42.3(a)(1). Also pending is
the District Clerk’s request for an extension of time in which to file the clerk’s record by
which she indicates the record has not been paid for and also notes that she was notified
that the case had been settled. The request for an extension of time is rendered moot by
our disposition of the motion to dismiss. Having dismissed the appeal at Appellant’s
request, no motion for rehearing will be entertained and our mandate will issue forthwith.
          Accordingly, the appeal is dismissed.
                                                                           Patrick A. Pirtle

                                                                                 Justice




7); Brooks v. State, 76 S.W.3d 426,
431 (Tex. App.-Houston [14th Dist.] 2002, no pet.). While probable cause requires more
than mere suspicion, the affiant need not present evidence establishing the suspect's guilt
beyond reasonable doubt or by a preponderance of the evidence. Moss v. State, 75
S.W.3d 132, 138 (Tex. App.-San Antonio 2002, pet. ref'd). He need only illustrate that
there is a reasonable probability that the accused committed an offense. And, whether that
standard has been met depends upon the totality of the circumstances. Id. at 138; Boley
v. State, 16 S.W.3d 95, 97 (Tex. App.-Houston [1st Dist.] 2000, no pet.). Furthermore, two
of the circumstances to be considered when the affiant grounds his statements on
representations by an informant are the reliability or veracity of the informant and the basis
of his knowledge. State v. Ozuna, 88 S.W.3d at 310; Martin v. State, 67 S.W.3d 340, 344
(Tex. App.-Texarkana 2001, pet. ref'd). Though being two considerations, they are not
independent requirements of a valid affidavit, however. State v. Ozuna, 88 S.W.3d at 310. 
In other words, both need not be proved for the affidavit to be valid. Additionally, a
deficiency in one may be offset by a strong showing of the other. Martin v. State, 67
S.W.3d at 344. With this said, we turn to the situation before us.

 As described in the affidavit and its attachments presented to the magistrate, the
informant identified, by name, each robber who appeared on the tape of the Town and
Country robbery. So too did he not only describe who actually owned the jacket being
worn by one of the suspects but also told the affiant that he (the informant) was "present
when [the] suspects bragged about doing this robbery." Authority assigns greater weight
to an informant's utterances when he personally observed the act which he discloses. See
State v. Ozuna, 88 S.W.3d at 310 n.1, citing Illinois v. Gates, 462 U.S. 213, 103 S.Ct.
2317, 76 L.Ed.2d 527 (1983) (stating that ". . . even if some doubt exists as to an
informant's motives, his explicit and detailed description of alleged wrongdoing, along with
a statement that the event was observed first-hand, entitles the tip to greater weight than
might otherwise be the case"). And, though the informant at bar may not have personally
witnessed the actual robbery by appellant and his partner, he nonetheless personally heard
them admit to it through their braggadocio. So his reiteration of the admission is entitled
to greater weight. 

 Moreover, the comment not only illustrates the basis of his knowledge about who
committed the offense but also provides additional grounds illustrating why he was able to
identify each robber seen in the video; simply put, he knew who they were because, among
other things, he was present when they bragged about committing the offense. To this,
we add his identification of the true owner of the coat worn by one malfeasant, which
evidence in turn supports the inference that he had some other personal acquaintance with
the robbers. So, in short, this rather strong evidence illustrating the basis of the informant's
knowledge offsets any lack of evidence in the affidavit regarding his reliability. (2) 

 Finally, when someone brags about committing a particular criminal act and that
admission is relayed to an independent magistrate via affidavit, it is within the realm of
common sense to conclude that there exists a reasonable chance that the braggart did that
about which he brags. So, we cannot say the affidavit at bar lacked adequate basis to
support an inference that there existed a reasonable probability that appellant committed
the robbery. In other words, we cannot accept the proposition that the affidavit failed to
demonstrate sufficient probable cause to arrest appellant. 

Issue Two - Ineffective Assistance of Counsel


 In his second issue, appellant attacks the trial court's failure to grant his motion for
new trial due to the ineffectiveness of his trial counsel. That is, because his attorney
allegedly failed to object to an in-court identification of appellant by Roberson, counsel was
deficient. Furthermore, the identification was allegedly objectionable because the
prosecutor showed Roberson photos of the appellant and his accomplice shortly before
trial. This purportedly constituted an unreasonably suggestive photo array. We overrule
the point.

 Among other things, the record illustrates that neither defense counsel nor the trial
court were aware of the suggestive photo array having been shown to Roberson until after
he identified appellant at trial. Having been unaware of the circumstance, counsel can
hardly be faulted for withholding objection to conduct of which he knew not. 

 Moreover, even if trial counsel uttered no objection, the trial court nonetheless
conducted a hearing to determine the legitimacy and effect of the photo spread. It did so
after trial counsel discovered, through cross-examining Roberson, that the latter had been
shown the pictures. And, though the trial court held that the spread was impermissibly
suggestive, it nonetheless concluded that the procedure did not taint Roberson's
identification of appellant. So, appellant actually was afforded that which his counsel
supposedly failed to obtain for him, i.e. an opportunity to contest the validity of both the
State's conduct and Roberson's identification. Thus, we find no prejudice, especially in
view of appellant's own admission of guilt via a statement given to the police and admitted
into evidence. 

Issue Three - Brady Violation


 The prosecutor's conduct alluded to in issue number two also underlies the
complaint raised in issue three. There, appellant alleges that the State violated the rule
of Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), since it
failed to disclose, prior to trial, that photographs of appellant and his accomplice had been
shown to Roberson immediately before trial. We overrule the issue for several reasons.

 First, and assuming arguendo that the prosecutor's conduct evinced a Brady
violation, the appellant was obligated to request a continuance. His failure to do so
resulted in a waiver of the complaint. Taylor v. State, 93 S.W.3d 487, 502 (Tex.
App.-Texarkana 2002, no pet.); State v. DeLeon, 971 S.W.2d 701, 706-07 (Tex.
App.-Amarillo 1998, pet. ref'd); Cohen v. State, 966 S.W.2d 756, 763 (Tex.
App.-Beaumont 1998, pet. ref'd). 

 Second, before reversal of the conviction is warranted under Brady, the defendant
must establish that in light of all the evidence, it is reasonably probable that the outcome
of the trial would have been different if the evidence had been disclosed. Hampton v.
State, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). Here, appellant gave the police a
statement wherein he admitted to committing the offense, and the statement was received
into evidence. Appellant having admitted his culpability, it was and is highly unlikely that
disclosure of the State's conduct prior to trial would have created a reasonable probability
that the outcome would have differed. See Medina v. State, 743 S.W.2d 950, 958 (Tex.
App.-Fort Worth 1988, pet. ref'd) (finding the information touching upon the issue of
identity immaterial because the appellant admitted to shooting the victims). Indeed, that
appellant inculpated himself also removed from question the topic of identity. The latter,
therefore, was immaterial for Brady purposes. Id. 

Issues Four, Five and Six - Deadly Weapon Issues


 Via his next three issues, appellant argues, in effect, that the evidence was both
legally and factually insufficient to support the jury's finding that he used or exhibited a
deadly weapon during the robbery, i.e. that he committed aggravated robbery. We
overrule the issues.

 The State charged appellant with having used and exhibited a deadly weapon, the
latter being a firearm. Before us, appellant argues that the State failed to prove this
allegation since it presented no evidence that the item utilized was capable of causing
death or serious bodily injury. Yet, the record contains some evidence upon which a jury
could rationally conclude beyond reasonable doubt that the appellant actually exhibited a
handgun or firearm; indeed, Roberson described the weapon as a "semiautomatic pistol." 
And, since a firearm or handgun is a deadly weapon per se, Lafleur v. State, 106 S.W.3d
91, 99 (Tex. Crim. App. 2003); Arthur v. State, 11 S.W.3d 386, 389 (Tex. App.-Houston
[14th Dist.] 2000, pet. ref'd), the State was not required to tender evidence illustrating that
the weapon was capable of causing death or serious bodily injury. Thomas v. State, 821
S.W.2d 616, 619-20 (Tex. Crim. App. 1991). 

 As for the statement by appellant that the weapon was not a firearm at all but rather
a BB gun, we do not find it of such ilk to render the verdict factually insupportable. (3) Again,
Roberson testified that the weapon was a semiautomatic pistol and that he believed it to
be a real gun that could kill him. So too did an officer testify that the weapon "was a
handgun," though he also conceded that a BB gun could look like a handgun and that he
did not know if the weapon was actually a firearm or a BB gun. Thus, the jury had before
it a disputed issue of fact. And, in resolving the matter, it could have opted to disbelieve
appellant's testimony and instead accept that illustrating the weapon to be an actual
firearm. See Edwards v. State, 10 S.W.3d 699, 701-02 (Tex. App.-Houston [14th Dist.]
1999, pet. dism'd) (holding that testimony from the victims that the defendant used a gun
that resembled a Colt .45 handgun rather than a BB gun allowed the jury to make a
reasonable deduction that the gun was a firearm).

 In short, the finding that appellant used or exhibited a deadly weapon in the robbery
enjoys the support of both legally and factually sufficient evidence. And, because it does,
the finding that he committed aggravated robbery (as opposed to mere robbery) also is
supported by both legally and factually sufficient evidence. 

Issue Seven - False or Reckless Statements in Affidavit


 Finally, in his seventh issue (presented via a supplemental brief), appellant again
attacks the legitimacy of the arrest warrant. This time, however, he posits that it should
have been invalidated since it was obtained through the intentional or reckless use of false
statements. The latter were purportedly uttered by Detective Sutton, the detective to whom
the informant identified appellant and his accomplice. Furthermore, the statements were
supposedly false since the informant later denied identifying the individuals and the video
tape was not of such quality and kind to permit one to see and, thereby, identify the people
captured on it. We overrule the issue.

 The statements referred to appear in a report attached to the affidavit discussed in
issue one above. They consist of the following:

 On 11-28-01 this investigator received information through S.I. (01-03) that
provided information to the identity of the suspects in this case.


 S. I. . . . advised that the identity of the suspects are Jason Lawson and
Jerome Nelson. S.I. . . . viewed the video tape that was obtained in this case
and positively identified the suspects in this case.


 S.I. . . . also informed this investigator that Jason Lawson was the person
who went behind the counter with the clerk. He stated that the white jacket
worn in the video has the words 'FUBU' on the back. The jacket belongs to
Alvin Lawson but Jason Lawson is the one wearing it. The subject was also
wearing a red cap. The stocky suspect at the counter holding the gun is
identified as Jerome Nelson. S.I. . . . advised this subject is a parolee. 


 S.I. . . . informed that they were present when suspects bragged about doing
this robbery. S.I. . . . advised suspects are robbing various businesses
throughout Lubbock. S.I. . . . said Jerome Nelson is wearing white and blue
FUBU shoes in the video. . . .


As can be seen from them, Sutton simply indicated that the S.I. saw the video. Nowhere
in it did he state that the S.I. identified the suspects solely from the images appearing on
it or that one could identify the suspects merely from their appearance in the video. 
Indeed, the officer actually testified, at a later hearing, that the informant had provided him
with the information about how the robbery occurred and who went behind the counter
before being shown the tape. (4) So too did he testify that despite the quality of the tape, it
would have provided sufficient information to identify the suspects if the viewer already
knew them. This coupled with his other testimony that the informant stated he had been
told by the suspects that they had committed the robberies, that the informant then
watched the video and recognized the clothing, build, and features of the suspects, and
that the informant stated: "[t]hat is them. I [would] know them anywhere" could reasonably
lead one to conclude that the informant was not identifying the suspects due to what he
saw in the video. Rather, it could be reasonably deduced that the informant could identify
them due to his prior knowledge about the offense, who committed it, and what the culprits
were wearing at the time. 

 Sutton did concede, at the hearing, that he did not believe the shoes appellant was
wearing were visible in the tape, though the informant said appellant was wearing them. 
Yet, there is no showing that the officer knew of or should have noticed the discrepancy
between the informant's statement and the contents of the tape when writing his report. 
See Dancy v. State, 728 S.W.2d 772, 783 (Tex. Crim. App. 1987), cert. denied, 484 U.S.
975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987) (holding that a misstatement resulting from
negligence or inadvertence does not render a warrant invalid); Brown v. State, 831 S.W.2d
847, 848 (Tex. App.-Dallas 1992), aff'd, 870 S.W.2d 53 (Tex. Crim. App. 1994) (holding
the same).

 Next, and to the extent that the informant later denied making the identification, the
circumstance raised an issue of credibility. That is, the trial court became obligated to
decide who to believe. And, since this was a matter of a witness' credibility, we must defer
to the selection made by the trial court. See Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997) (requiring us to defer to the trial court's credibility choices). And, the trial
court obviously selected Officer Sutton.

 In sum, appellant failed to establish by a preponderance of the evidence that
Sutton's statement with respect to the informant's identification was intentionally false or
made with reckless disregard for the truth. Thus, we again hold that the trial court did not
abuse its discretion in overruling appellant's motion to suppress. 

 Accordingly, the judgment of the trial court is affirmed.


 Brian Quinn 

 Justice 

 

Do not publish.

1. The seventh issue is presented for the first time in appellant's supplemental brief.
2. This is not to suggest that the affidavit was devoid of all evidence tending to paint the informant as
reliable. Indeed, one can reasonably infer from the affidavit that he was in the presence of the police when
the identification was made. A face-to-face meeting such as this is an indicia suggestive of credibility since
the officer may then readily identify the informant should his utterances prove deceitful. United States v.
Jenkins, 313 F.3d 549, 554-55 (10th Cir. 2002) cert. denied, 538 U.S. 1006, 123 S.Ct. 1917, 155 L.Ed.2d 838
(2003).
3. The weapon does not appear as an exhibit in the appellate record.
4. Appellant attempted to establish at trial that the video had been released to the press and the
informant could have viewed the video prior to talking to police. However, the informant denied to police that
he had previously seen the robbery.