In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-015 CR


____________________



JIMMY WAYNE SPANN, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 410th District Court


Montgomery County, Texas


Trial Cause No. 06-06-05493-CR






 MEMORANDUM OPINION


 Jimmy Wayne Spann appeals his conviction for possession of a controlled substance.
See Tex. Health & Safety Code Ann. § 481.115(c) (Vernon 2003). In six issues, Spann
complains that the trial court erred in denying (1) his motion to suppress his oral and written
statements, (2) his motion for mistrial concerning the dismissal of a juror after the jury panel
was sworn, and (3) his motion for mistrial as a result of an alleged Brady violation. See
Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We overrule his
issues and affirm the judgment of the trial court. 

Background


 While on routine patrol, Trooper Roger Wolsey stopped a car driven by Brenda
Mackenzie. Spann was Mackenzie's passenger. Trooper Wolsey recorded the traffic stop
on his patrol car's camera.

 Based on his initial observations and encounter with Mackenzie, Trooper Wolsey
suspected that she had used drugs. Further, Trooper Wolsey determined that Spann had an
outstanding warrant for his arrest, arrested him, and placed him in the back of the patrol car. 

 Mackenzie then consented to Trooper Wolsey's request to search the vehicle. During
the search, Trooper Wolsey discovered a cigarette pack containing three rocks of crack
cocaine in the car's center console. At that point, Trooper Wolsey arrested Mackenzie for
possession of a controlled substance, informed her of her Miranda (1) rights, and asked about
the drugs he found in the car. Mackenzie denied that the drugs belonged to her.

 Next, Trooper Wolsey returned to his patrol car and orally admonished Spann of his
rights. After informing Spann that Mackenzie said Spann had purchased the drugs, Trooper
Wolsey asked if Spann knew anything about them. Spann did not respond. Trooper Wolsey
stated, "[S]ince neither one of y'all want to claim it, then I'm gonna charge both of y'all for
it."

 Spann then requested Trooper Wolsey's permission to speak to Mackenzie. 
According to Trooper Wolsey, Mackenzie told Spann to "do the right thing." After that
conversation, Spann told Trooper Wolsey that Mackenzie knew nothing about the drugs. 
Spann agreed to provide a written statement at the local Department of Public Safety office. 
Mackenzie offered to make a written statement at the DPS office as well. Trooper Wolsey 
told Mackenzie that he intended to detain her until she and Spann had completed their
statements.

 At the DPS office, Trooper Wolsey gave Spann additional admonishments, which
Spann acknowledged in writing. In his written statement, Spann stated that he was the only
person with knowledge of the drugs in the cigarette pack. Trooper Wolsey released
Mackenzie after she completed her written statement.

 Spann requested that the trial court suppress both his written and oral statements. 
After a hearing, the trial court denied Spann's requests. Spann renewed his requests to
suppress the statements after the State rested. After hearing argument from counsel, the trial
court again denied Spann's motion to suppress.

 After retiring, the jury found Spann guilty of possession of a controlled substance. 
The trial court subsequently sentenced Spann to nine years' imprisonment. Spann timely
perfected an appeal.

Analysis

 A. Did the Trial Court Err in Denying Spann's Motion to Suppress His Oral and
Written Statements?


 In issues one and two, Spann complains that the trial court erred in denying the motion
to suppress his statements. Spann maintains that when he gave his statements, he did not
knowingly and voluntarily waive his rights under article 38.22 of the Texas Code of Criminal
Procedure. See Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon 2005). Moreover, Spann
argues that Trooper Wolsey coerced him into confessing to the sole possession of the drugs
in exchange for a promise to release Mackenzie, his girlfriend, from custody.

 Generally, we review a trial court's ruling on a motion to suppress under an abuse of
discretion standard. See Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). The
trial court is the sole judge of the weight and credibility of the evidence at a hearing on a
defendant's motion to suppress evidence. Wood v. State, 18 S.W.3d 642, 646 (Tex. Crim.
App. 2000); Alvarado v. State, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995). Almost total
deference is afforded to the trial judge on his resolution of credibility questions. Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). When, as in this case, the trial court issues
findings of fact, we determine first whether the evidence, viewed in the light most favorable
to the trial court's ruling, supports these fact findings. See State v. Kelly, 204 S.W.3d 808,
818 (Tex. Crim. App. 2006). We then review the trial court's legal ruling de novo "unless
the trial court's supported-by-the-record explicit fact findings are also dispositive of the legal
ruling." See id. 

 An accused's statement may be used in evidence against him if it was freely and
voluntarily made without compulsion or persuasion. Tex. Code Crim. Proc. Ann. art. 38.21
(Vernon 2005). We determine the voluntariness of a statement based on an examination of
the totality of the circumstances under which it was obtained. See Creager v. State, 952
S.W.2d 852, 855 (Tex. Crim. App. 1997). A statement is involuntary "only if there was
official, coercive conduct of such a nature that any statement obtained thereby was unlikely
to have been the product of an essentially free and unconstrained choice by its maker." 
Alvarado, 912 S.W.2d at 211; see also State v. Terrazas, 4 S.W.3d 720, 723 (Tex. Crim.
App. 1999). In order for a promise to render a confession invalid, "the promise must be
positive, made or sanctioned by someone in authority, and of such an influential nature that
it would cause a defendant to speak untruthfully." Martinez v. State, 127 S.W.3d 792, 794
(Tex. Crim. App. 2004). The actual truth or falsity of a confession is irrelevant to a 
determination about whether the statement was voluntarily made. Id. at 794-95. 

 The trial court entered sixty-three findings of fact and twelve conclusions of law that
address its ruling on Spann's motion to suppress. In support of its conclusion that Spann's
oral and written statements were freely and voluntarily made without compulsion or
persuasion, the trial court found, among other findings, that (1) Spann was properly
admonished of his Miranda rights; (2) Spann understood his rights and voluntarily agreed
to waive them; (3) Spann was not coerced, enticed, or promised anything, namely leniency
for Mackenzie, in return for his statements; and (4) Trooper Wolsey properly detained
Mackenzie in order to complete his investigation.

 The record contains evidence that supports the trial court's findings and conclusions.
In reviewing the video, Trooper Wolsey informed Spann of his rights. When asked if he
understood his rights, Spann did not affirmatively state that he failed to understand them. 
Spann then requested permission to speak with Mackenzie and subsequently initiated a
conversation with Trooper Wolsey regarding the drugs. After arriving at the DPS office,
Spann was re-admonished of his rights and provided a document that he signed
acknowledging his rights. We conclude that the evidence supports the trial court's finding
that Spann understood his rights and then voluntarily decided to waive them.

 Spann contends that Trooper Wolsey promised to release Mackenzie if Spann
confessed. The record does not support his contention. Instead, the evidence shows that
Trooper Wolsey detained Mackenzie and Spann because the drugs were discovered in the
car's center console and both had equal access to them. Initially, neither Spann nor
Mackenzie claimed possession of the drugs and thus, Trooper Wolsey commented that both 
of them could be arrested for possession of the substance. See generally McGoldrick v. State,
682 S.W.2d 573, 578 (Tex. Crim. App. 1985) (holding that if evidence affirmatively links
an accused to the drugs, an accused, along with others, may jointly possess such drugs and
that such possession need not be exclusive). It was not until after Spann independently
requested to speak with Mackenzie that Spann confessed to possessing the drugs. Further,
the record demonstrates that Mackenzie's detention was not unduly prolonged. Rather, her
detention only lasted long enough for Trooper Wolsey to obtain her written statement. Under
these facts, we hold that the trial court did not abuse its discretion in concluding that Trooper
Wolsey made no promises to Spann in return for his confession. See Martinez, 127 S.W.3d
at 795.

 Spann also argues that the trial court should have excluded his written statement 
under the "fruit of the poisonous tree" doctrine. (2) However, as we previously explained,
Spann voluntarily made his initial oral statement. As a result, Spann's "fruit of the poisonous
tree" argument is without merit.

 After considering the circumstances under which Spann gave statements, we conclude
that the trial court could reasonably find that Spann gave his oral and written statements
voluntarily. We find no abuse of discretion in the trial court's ruling on Spann's motion to
suppress. See Oles, 993 S.W.2d at 106. Accordingly, issues one and two are overruled.

 B. Did the Trial Court Err in Its Denial of Spann's Motion for Mistrial Regarding
the Dismissal of a Juror? 


 In his third and fourth issues, Spann argues that the trial court erred in denying his
motion for mistrial after it became apparent that a juror failed to disclose his prejudice or bias
against drug users or drug offenses. Specifically, Spann claims that he would have used one
of his peremptory strikes against the juror had that juror revealed his bias.

 The parties began to select a jury on September 18, 2006. During jury selection, the
trial court allowed the parties to select an alternate juror. After the twelve jurors and
alternate were sworn, but prior to their hearing any evidence, a juror approached the trial
judge and said "I'm really biased against prescription drug abuse[.]" After informing the
parties of the juror's statement, the trial court advised them that it did not intend to strike the
juror. Spann's counsel relayed her concern that the juror had expressly stated he was
"biased." Spann's counsel then stated: "Well, I was just going to suggest, we've all agreed
we have an alternate. It might be prudent at this point to go ahead and place the alternate in
[his] place . . . ." The trial judge then allowed the parties to question the juror outside the
presence of the other jurors.

 When questioned, the juror agreed that he would not presume a person to be innocent
if accused of a drug crime. However, the juror also stated that he could follow the trial
court's instructions. After the parties finished examining the juror, Spann's counsel stated
that she would prefer a mistrial, but instead of moving for a mistrial, she asked the judge to
excuse the juror. When the State did not object, the trial court excused the juror.

 The replacement juror and the eleven remaining jurors returned several days later to
hear opening statements. Just before the parties were to present opening statements, Spann's
counsel requested that the court grant a mistrial. During her presentation of the motion for
mistrial, Spann's counsel admitted that she had agreed to allow the juror in question to be
removed and the alternate to be seated. The trial court denied Spann's motion.

 The State contends that by moving to strike the juror and allowing the seating of the
alternate, Spann waived any complaint about the juror's failure to reveal his bias or the
procedure followed by the trial court in seating the alternate juror. In its brief, the State
asserts that "defense counsel suggested and approved the remedy of using an alternate juror,
thus waiving any error."

 Assuming without deciding that error occurred in the procedure followed here, we
agree that Spann invited the alleged error. "Invited error" estops a party from complaining
on appeal of an action that it induced. Prystash v. State, 3 S.W.3d 522, 531 (Tex. Crim. App.
1999). As the Texas Court of Criminal Appeals explained:

 Waiver might usefully be distinguished from what is sometimes
called "invited error." If a party affirmatively seeks action by
the trial court, that party cannot later contend that the action was
error. This is not really a waiver of error previously committed. 
Rather, it is part of the definition of what can constitute error,
and quite reasonably defines error of which a party may
complain as excluding those actions of the trial court actually
sought by the party in that tribunal. 

 

Id. (quoting 43 George E. Dix & Robert O. Dawson, Texas Practice: Criminal
Practice and Procedure § 42.141 (Supp. 1999)).

 In this case, Spann's counsel suggested that the alternate juror be placed in the
original juror's place and then moved to excuse the original juror. Under these
circumstances, we hold that the doctrine of invited error estops Spann from complaining on
appeal about the trial court's decision to grant his request to substitute the alternate juror in
the place of the juror that expressed a bias. See id.; see also Jones v. State, 119 S.W.3d 766,
783-84 (Tex. Crim. App. 2003) (holding that defendant was estopped from complaining
about the trial court's acceptance of defendant's proposal to dismiss a juror rather than
granting his motion for mistrial); Degadillo v. State, No. 2-07-183-CR, 2008 Tex. App.
LEXIS 4782, at *16 (Tex. App.-Fort Worth, June 26, 2008, no pet.) (mem. op.) (holding that
defendant was estopped from complaining about the trial court's actions, even if those
actions were fundamental error, when defendant requested that the trial court substitute an
excused member of the venire for a disqualified juror after jury was sworn). We overrule
Spann's third and fourth issues. 

 C. Did the Trial Court Err When it Denied Spann's Motion for Mistrial After an
Alleged Brady Violation?


 In his last two issues, Spann asserts that the trial court erred by denying his second
motion for mistrial based on the State's alleged failure to produce material evidence. 
According to Spann's counsel, she first learned that the State had tested the cigarette pack
for fingerprints on the second day of trial. Spann's counsel argued that the State should have
advised her sooner of the test and its results. Pursuant to Brady, Spann moved for a mistrial
based upon the State's nondisclosure of information about the cigarette pack's testing. See
Brady, 373 U.S. 83. Spann did not request an instruction to cure any problem possibly
created by the State's failure to disclose the testing earlier, and at no time did Spann request
a continuance. The trial court denied Spann's motion for a mistrial.

 On appeal, Spann contends that the State's failure to disclose the evidence concerning
the cigarette pack violated his rights to due process. See id. He argues that had the evidence
been produced before trial, his counsel would have refrained from saying during opening
statement that Spann "was never asked for fingerprints to check against the cigarette pack." 
Moreover, Spann asserts that he could have altered his trial strategy had the information
about the State's testing been made available to him in a more timely manner.

 The State has an affirmative duty to turn over favorable material evidence to the
defense. See Brady, 373 U.S. at 87; Harm v. State, 183 S.W.3d 403, 406 (Tex. Crim. App.
2006) (en banc). To establish reversible error under Brady, a defendant must show that (1)
the State failed to disclose evidence, 2) the evidence is favorable to him, and (3) the evidence
is material (i.e., whether a reasonable probability exists that the results of the proceeding
would have been different if the evidence had been disclosed to the defense). Hampton v.
State, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002); see Little v. State, 991 S.W.2d 864, 866
(Tex. Crim. App. 1999). 

 When the disclosure of evidence at issue first occurs during trial, the question
becomes whether the State's tardy disclosure prejudiced the defendant. Little, 991 S.W.2d
at 866. Generally, courts have found that a defendant's failure to request a continuance is
relevant to whether the court may review a Brady violation on appeal. See Young v. State,
183 S.W.3d 699, 706 (Tex. App.-Tyler 2005, pet. ref'd); Taylor v. State, 93 S.W.3d 487, 502
(Tex. App.-Texarkana 2002, pet. ref'd); Gutierrez v. State, 85 S.W.3d 446, 452 (Tex.
App.-Austin 2002, pet. ref'd); Williams v. State, 995 S.W.2d 754, 761-62 (Tex. App.-San
Antonio 1999, no pet.); Cohen v. State, 966 S.W.2d 756, 763 (Tex. App.-Beaumont 1998,
pet. ref'd); but see Moore v. State, 143 S.W.3d 305, 317 (Tex. App.-Waco 2004, pet. ref'd). 
Nevertheless, if the defendant received the material in time to use it effectively at trial, a
conviction should not be reversed just because the information was not disclosed earlier. See
Little, 991 S.W.2d at 866; see also Marshall v. State, 210 S.W.3d 618, 636 (Tex. Crim. App.
2006), cert. denied, 128 S.Ct. 87, 169 L.Ed.2d 66, 76 U.S.L.W. 3158 (2007). 

 As soon as Spann's counsel discovered that evidence had not been disclosed, she
alerted the trial court of a potential Brady violation. Soon thereafter, she moved for a
mistrial. However, the record does not reflect that Spann ever requested a continuance, and
reflects that no identifiable prints were recovered from the cigarette pack. We hold that
under the circumstances here, Spann's failure to request a continuance is relevant to the issue
of whether the disclosure of the evidence during trial prejudiced him. See State v. Fury, 186
S.W.3d 67, 73-4 (Tex. App.-Houston [1st Dist.] 2005, pet. ref'd). Additionally, the report
of the test results was entered into evidence. Then, during his cross-examination of Trooper
Wolsey, Spann used the test results to indicate that his fingerprints were not identified on the
cigarette pack. Finally, Spann never requested any instruction to cure any alleged prejudice
that he asserts was connected to his attorney's comment to the jury during opening statement,
nor do we see how his attorney's comment could have been made to appear untrue by the
tardily disclosed evidence at issue here. Therefore, Spann failed to show that any potential
Brady violation prejudiced him. See Marshall, 210 S.W.3d at 636; Little, 991 S.W.2d at 866. 
We overrule Spann's fifth and sixth issues. 

 Because we have overruled all of Spann's issues, we affirm the judgment of the trial
court.

 AFFIRMED.

 ____________________________

 HOLLIS HORTON

 Justice


Submitted on February 28, 2008

Opinion Delivered October 15, 2008

Do Not Publish


Before McKeithen, C.J., Gaultney and Horton, JJ.
1. Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
2. See Segura v. United States, 468 U.S. 796, 804, 104 S.Ct. 3380, 82 L.Ed.2d 599
(1984).